IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KAWASAKI HEAVY INDUSTRIES, LTD. a/k/a KAWASAKI JUKOGYO KABUSHIKI KAISHA and KAWASAKI MOTORS MANUFACTURING CORP., U.S.A.,<br><br>    Plaintiffs<br><br>v.<br><br>BOMBARDIER RECREATIONAL PRODUCTS, INC., BRP U.S., INC., BANK OF MONTREAL (in the capacity as administrative agent), HARRY MARCUS, and ROBERT GOETHALS<br><br>    Defendants. | Cause No. 10-641-DRH |

### DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT, OR IN THE ALTERNATIVE, TO STAY PLAINTIFFS' ACTION PENDING ARBITRATION AND MEMORANDUM OF LAW IN SUPPORT

Plaintiffs' claims arise out of and relate to the settlement agreement between plaintiffs and defendants, Bombardier Recreational Products, Inc. ("BRP") and BRP U.S., Inc. ("BRP U.S.") (collectively referred to as the "BRP Parties"), and are subject to the arbitration provision contained in the settlement agreement. Thus plaintiffs' Complaint should be dismissed or, in the alternative, their action should be stayed pending arbitration in accordance with the parties' agreement.

### Background

On February 17, 2006, BRP and BRP U.S. filed a patent infringement lawsuit against plaintiffs in the United States District Court for the Middle District of Florida. (*See* Doc # 2, ¶ 12). On October 3, 2006, plaintiffs filed a patent infringement lawsuit against BRP and BRP

U.S. in the United States District Court for the Eastern District of Texas, Texarkana Division. (*See* Doc # 2, ¶ 14). On April 11, 2007, BRP and BRP U.S. filed another lawsuit against plaintiffs in the United District Court for the Eastern District of Texas, Tyler Division, alleging infringement of certain U.S. patents. (*See* Doc # 2, ¶ 15).

Outside of the allegations in the foregoing lawsuits, the parties also alleged various patent infringements against each other. (*See* Doc # 2, ¶ 13; *See also*, Settlement Agreement attached hereto and referenced herein as Exhibit A, pp. 1-3). On September 6, 2007, plaintiffs and BRP and BRP, US reached an agreement to settle the disputes alleged in the various lawsuits and disputes noted above, and subsequently executed the attached Settlement Agreement. (*See* Doc # 2, ¶ 16; Exhibit A). The Settlement Agreement contained an alternative dispute resolution provision in which the parties mutually agreed to arbitration. (*See* Exhibit A, p. 15). The arbitration agreement in the Settlement Agreement states as follows:

> Any claim, dispute or controversy between the parties arising out of or relating to this Settlement Agreement shall be resolved by first a personal meeting between representatives of each party to the matter, with such representatives having the power to resolve the matter on behalf of their company. Should a resolution fail to be reached through a personal meeting or should either party refuse or fail to reasonably attend a personal meeting, the party asserting such dispute shall provide notice to the other party of its intention to submit the dispute to non-binding mediation, each party agrees to submit the dispute to non-binding mediation to be held in Dallas, Texas. Each party will bear its own costs. There will be no discovery in such proceeding other than a specific factual identification of the alleged breach and the response thereto. Should a resolution fail to be reached through the non-binding mediation or should either party refuse or fail to reasonably participate in the non-binding mediation, each party agrees to submit the dispute to binding arbitration to be held in Dallas, Texas. Each party will bear its own costs. The arbitration will be conducted in accordance with the prevailing arbitration rules of the American Arbitration Association for Complex Commercial Litigation or such other rules as the parties may agree. The arbitrator shall render a reasoned award, setting forth the findings of fact and conclusions of law upon which the award is based. The award shall be final and binding upon both parties. Judgment upon the award may be entered in any court having jurisdiction thereof.

The Settlement Agreement took effect on or about March 31, 2008. (*See* Doc # 2, ¶ 23). Plaintiffs, BRP and BRP, US were signatories to the Settlement Agreement. (*See* Exhibit A, p.18). Pursuant to the Settlement Agreement, BRP and BRP, U.S. demanded arbitration on June 11, 2008. (*See* June 11, 2008 e-mail, attached hereto as Exhibit B). The Kawasaki parties refused the demand for arbitration.

Instead, on August 23, 2010, plaintiffs filed the present lawsuit. In addition to BRP and BRP, U.S, plaintiffs have named BRP and BRP, U.S.'s counsel in the underlying suits, Harry Marcus ("Marcus") and Robert Goethals ("Goethals"), as defendants in the present action. Moreover, plaintiffs have named The Bank of Montreal ("BOM"), one of BRP's lenders, as a defendant in the present action.

Plaintiffs seek specific performance of the Settlement Agreement in Count I. (*See* Doc # 2, ¶¶ 27-32). In the alternative, plaintiffs allege a claim for breach of the Settlement Agreement against BRP and BRP U.S. (*See* Doc # 2, ¶¶ 33-41). In Counts III, IV, V and VI, plaintiffs assert claims for fraud, fraud in the inducement, negligent misrepresentation, negligent misrepresentation and negligence, respectively, against BRP, BRP U.S., Marcus and Goethals. (*See* Doc # 2, Counts III-VI). Finally, in Counts VII and VIII, plaintiffs allege claims for breach of a third party beneficiary contract and tortious interference, respectively, against BOM. (*See* Doc # 2, Counts VII-VIII).

For the reasons and authority fully set forth below, this Court should dismiss plaintiffs' Complaint or, in the alternative, stay plaintiffs' action because all of plaintiffs' claims are subject to arbitration pursuant to the Settlement Agreement executed by plaintiffs.

## Argument

In this diversity suit involving interstate commerce, the Federal Arbitration Act, 9 U.S.C. 1, et seq. ("FAA"), applies. *See Paul Davis Systems of Northern Illinois Inc., an Illinois Corp. v. Paul W. Davis Systems, Inc., a Florida Corp.*, 1998 WL 749041, 2 (N.D.Ill. 1998). The FAA "creates a basis for federal substantive law under the commerce clause of the Constitution." *Griffin v. Semperit of America, Inc.*, 414 F.Supp. 1384, 1387 (D.C.Tex. 1976) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 405 (1967)). Thus, this Court must rely on federal common law in interpreting the arbitration agreement at issue in this case. *Id.*

The FAA applies to all contracts involving interstate commerce. *See* 9 U.S.C. § 2. It establishes a strong federal policy favoring enforcement of arbitration agreements. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 87 (2002); *see also, Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 276-277 (1995)) (FAA's language should be interpreted to provide for enforcement of arbitration agreements within full reach of the commerce clause). In deciding whether to grant or deny a motion to compel arbitration, any doubts about arbitrability of claims should be resolved in favor of arbitration. *Teletronics Pacing Systems v. Guidant Corp.*, 143 F.3d 428, 430-31 (8th Cir. 1998); *see also, InteGen N. V. v. Gring*, 344 F.3d 134, 142 (1st Cir. 2003), (as long as the parties are bound to arbitrate and the court has personal jurisdiction over them, the court has an unflagging, nondiscretionary duty to grant a timely motion to compel arbitration).

1. **The Settlement Agreement Compels Arbitration:**

A plain reading of the arbitration provision in the Settlement Agreement compels dismissal of this action, or in the alternative, a stay of plaintiffs' action pending arbitration. As an initial matter, the Settlement Agreement involves interstate commerce. The agreement is

made between multiple parties residing in different states and countries, and comprehensively resolved lawsuits concerning property rights in two different states. Moreover, at its core, the consumer products ("Watercrafts"), the design and manufacture of which was at issue in the lawsuits and disputes the Settlement Agreement resolved, are manufactured in various states, and transported, sold and used in many other states. Thus, the Settlement Agreement involves interstate commerce, bringing the arbitration agreement contained therein within the ambit of the FAA.

It cannot be disputed that the parties agreed to arbitrate the very claims plaintiffs have brought before this court. Plaintiffs themselves admit in their Complaint that the Settlement Agreement is a valid, binding and enforceable contract. (*See* Doc # 2, ¶¶ 28 and 34). As noted above, in the Settlement Agreement, the parties agreed to submit "any claim, dispute, or controversy between the parties arising out of or relating to the Settlement Agreement" to a binding arbitration to be held in Texas. (Exhibit A, ¶ 18). Plaintiffs have alleged that BRP and BRP U.S. and their attorneys have breached the Settlement Agreement by not making certain security agreements subordinate to the Settlement Agreement (*See* Doc # 2, Counts I and II), committed fraud in inducing the plaintiffs to enter into the Settlement Agreement (*See* Doc # 2, Counts III and IV), negligently misrepresented facts in connection with negotiating the Settlement Agreement (*See* Doc # 2, Count V), breached a duty of care in falsely reporting that they had an agreement to make certain security agreements subordinate to the Settlement Agreement (*See* Doc # 2, Count VI).

Plaintiff raised similar arguments about the Settlement Agreement in their Combined Motion to Vacate Stipulated Dismissal Pursuant to Rule 60(B)(3) and To Compel Compliance with Settlement, filed in United States District Court, Eastern District of Texas, Texarkana

Division and captioned Kawasaki Heavy Industries, LTD v. Bombardier Recreational Products, Inc. et al., Case No. 5:06-CV-222. See Exhibit C, attached hereto. In that case after argument Judge Folsom ruled: "At its core, this is a contract dispute – a dispute about whether paragraph 3 of the Agreement has or has not been breached by Bombardier." See Order of 9/16/09, attached as Exhibit D. The disputes here likewise revolve around the same issues about the Settlement Agreement. The arbitration clause was designed to cover such disputes.

Plaintiffs have further alleged that BOM breached an agreement it (BOM) had with BRP and BRP U.S., which was made for the benefit of plaintiffs by force of the Settlement Agreement (*See* Doc # 2, Count VII). Lastly plaintiffs allege BOM tortiously interfered with the Settlement Agreement by refusing to subordinate its security interests to the Settlement Agreement (*See* Doc # 2, Count VIII)).

All the foregoing Counts, and the allegations contained therein, directly arise out of and/or immediately relate to the Settlement Agreement. In fact, all of plaintiffs' counts refer to and rely on the Settlement Agreement for their viability. All of plaintiffs' counts allege some conduct arising out of or relating to the negotiation, execution and performance of the Settlement Agreement, and none of those counts can stand without the Settlement Agreement being executed, valid and enforceable. Plaintiffs' claims, thus, constitute "claim[s], dispute[s] or controvers[ies] between the parties arising out of or relating to [the] Settlement Agreement." The Court should dismiss plaintiffs' Complaint and enforce the arbitration provision. In the alternative, the Court should stay plaintiffs' action pending arbitration.

### 2. The Settlement Agreement Applies to All of the Defendants

#### A. BRP and BRP U.S.

Plaintiffs' Complaint alleges they entered into the Settlement agreement with BRP and BRP US. (*See* Doc # 2, ¶¶ 20). All of plaintiffs' claims in their Complaint stem from alleged conduct relating to the Settlement Agreement. (*See* Doc # 2, generally). The Settlement Agreement provides that it is "binding upon and shall inure to the benefit of the parties hereto, and their respective agents, employees, representatives, officers, directors, divisions, subsidiaries, affiliates, heirs, successors and assigns." (Exhibit A, ¶11). It is apparent from the plain language of the Settlement Agreement that BRP and BRP U.S. are bound by the terms of that agreement, including the agreement to submit any claims arising out of or relating to the Settlement Agreement to arbitration. Moreover, in the arbitration agreement, the parties [Kawasaki Parties and BRP Parties] specifically agreed to submit any claims arising out of the Settlement Agreement to arbitration. (Exhibit A, ¶18, *supra*). Thus, plaintiffs are bound to submit their claims against BRP and BRP U.S. to arbitration as the BRP parties have previously demanded. The Court should dismiss plaintiffs' Complaint or stay plaintiffs' action pending arbitration.

#### B. Non-Signatories:

Co-defendants Harry Marcus, Robert Goethals and Bank of Montreal (collectively, "Non-signatories") were not signatories to the Settlement Agreement. However, plaintiffs' claims against these non-signatories should not affect the Court's determination of whether to dismiss plaintiffs' Complaint or, in the alternative, stay the action pending arbitration. Moreover, plaintiffs' claims against the non-signatories are so intertwined with the Settlement Agreement

such that the non-signatories should be able to enforce the arbitration agreement against plaintiffs.[1]

An arbitration agreement must be enforced "notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." *Cosmotek Mumessillik Ve Ticaret Ltd. Sirkketi v. Cosmotek USA, Inc.*, 942 F.Supp. 757, 759 (D.Conn. 1996). Plaintiffs cannot avoid the force of the arbitration for which they had contracted by simply adding non-signatory defendants. *Id.* If such a practice is countenanced, the very efficacy of contracts and the federal policy favoring arbitration will be defeated. *Id.*

An arbitration agreement may be enforced against a signatory by a non-signatory where "a careful review of 'the relationship among the parties, the contracts they signed ..., and the issues that had arisen' among them discloses that 'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" *JLM Industries v. Stolt-Nielsen SA,* 387 F.3d 163, 177 (2d Cir.2004) (quoting *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.,* 271 F.3d 403, 406 (2d Cir.2001)); *see also Contec Corp. v. Remote Solution, Co.,* 398 F.3d 205, 209 (2d Cir.2005) (noting that "[a]useful benchmark for relational sufficiency can be found in our estoppel decision in *Choctaw* ... where we held that the signatory to an arbitration agreement is estopped from avoiding arbitration with a non-signatory when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.") (internal quotation marks and citation marks omitted)).

### 1.     Harry Marcus, Robert Goethals:

---

[1] Defendants Marcus, Goethals and Bank of Montreal are separately represented and the undersigned does not speak for them. The undersigned understands that each of the co-defendants intends to file motions attacking the jurisdiction of this court to proceed against them.

In *In re HBLS L.P.*, the court held that a corporate officer, who was sued in his individual capacity by one of the corporation's creditors, was bound by the arbitration agreement contained in a settlement agreement between the corporation and the creditor. 272 B.R. 390, 392 - 393 (Bkrtcy. S.D.N.Y. 2000). The court held that the officer, acting as an agent, did sign off on the settlement agreement on behalf of the corporation, and the settlement agreement's provision that "[any disputes or determinations arising under, relating to or in connection with this Settlement Agreement, ... shall be determined solely and exclusively by the Mediator, whose decision shall be final and binding and nonappealable, "clearly provided for the dispute between the corporation and the creditor to be determined by arbitration. *Id.*

Similarly, in a terminated employees' action against his employer and its majority owner and general manager, the court in *Collie v. Wehr Dissolution Corp.*, held that the general manager, as agent of the plaintiff's employer, can invoke the arbitration provision contained in an agreement signed by plaintiff to compel plaintiff to arbitrate his claims against the general manager. 345 F.Supp.2d 555, 562 (M.D.N.C., 2004) (noting that "[i]f plaintiffs could sue individual defendants, they could too easily avoid the arbitration agreements that they signed with corporate entities").

Like the individual defendants in *In re HBLS L.P.*, and *Collie*, Marcus and Goethals should be able to invoke the arbitration agreement signed by plaintiffs to dismiss plaintiffs' action against them. Plaintiffs have acknowledged the validity and enforceability of the Settlement Agreement, and are seeking to recover from the non-signatories based on same. Goethals and Marcus, like the individual defendants in *In re HBLS L.P.*, and *Collie, supra*, were acting as agents and representatives of BRP and BRP U.S. in connection with negotiating and finalizing the Settlement Agreement as alleged by plaintiffs. Indeed, the Settlement Agreement

defines "BRP releasees" to include "BRP, and its affiliates, . . . . attorneys, agents, . . . ." (*See* Exhibit A, p. 4). There can be no doubt that Goethals and Marcus, as agents, were intended beneficiaries of the terms of the Settlement Agreement, including the parties' agreement to arbitrate.

Further, plaintiffs' should not be allowed to avoid their contractual duty to arbitrate their claims which arise out of and relate to the Settlement Agreement they entered into with BRP and BRP U.S. by merely suing the BRP Parties' attorneys. Plaintiffs agreed to arbitrate any claims or controversies arising out of or relating to the Settlement Agreement. Plaintiffs' claims against Marcus and Goethals arise out of and relate to the Settlement Agreement. Indeed, plaintiffs' claims against Marcus and Goethals in Counts III-VI are contemporaneously alleged against BRP and BRP U.S. as well. (*See* Doc # 2, Counts III-VI). Plaintiffs do not make any independent allegations or claims against Marcus and Goethals, but allege they acted improperly in representing BRP and BRP U.S. during negotiation of the Settlement Agreement. As such, plaintiffs' claims against Marcus and Goethals cannot be separated from their claims against BRP and BRP U.S. and, as such, are intertwined with the Settlement Agreement, such that, Marcus and Goethals are entitled to enforce the arbitration agreement entered into by plaintiffs in the same manner as BRP and BRP U.S. Thus, the presence of Marcus and Goethals does not defeat BRP and BRP U.S.'s entitlement to a dismissal of plaintiffs' Complaint or a stay of their action pending arbitration.

    2.    **<u>Bank of Montreal (BOM):</u>**

Plaintiffs allege BOM breached an agreement it had made with BRP and BRP U.S. to subordinate its (BOM) security interests in certain BRP patents to the Settlement Agreement, and tortiously interfered with the BRP Parties' performance of their obligations under the Settlement

Agreement. (*See* Doc # 2, Counts VII and VIII). There is no conceivable way that BOM, a lender of BRP not party to the Settlement Agreement, can resolve the claims against it without reference, interpretation and reliance on the Settlement Agreement between plaintiffs and the BRP Parties.

The relationships between and among plaintiffs, the BRP Parties, and BOM, and the present dispute regarding the Settlement Agreement, show that resolution of plaintiffs' claims against BOM is necessarily "intertwined" with the Settlement Agreement signed by plaintiffs. *See JLM Industries, supra.* Plaintiffs should not be allowed to simultaneously rely on parts of the Settlement Agreement for their claims against BOM, and the non-signatories in general, while avoiding the agreement's provision for resolving claims arising out of or relating to the agreement. Permitting plaintiffs to litigate their arbitrational claims against BOM would necessarily render the arbitration proceedings instituted by the BRP and BRP US parties somewhat meaningless and thwart federal policy in favor of arbitration. *See Long v. Silver*, 248 F.3d 309 (4th Cir. 2001). As plaintiffs' claims against BOM arise out of and relate to the Settlement Agreement, BOM's presence in the lawsuit does not defeat BRP and BRP U.S.'s entitlement to a dismissal of plaintiffs' Complaint or a stay of their action pending arbitration.

## Conclusion

This court should dismiss plaintiffs' Complaint because all claims asserted therein properly belong in arbitration pursuant to the valid and enforceable arbitration agreement entered into by plaintiffs. In the alternative, this Court is duly authorized to stay plaintiffs' action pending arbitration. *Pryner v. Tractor Supply Co.*, 109 F.3d 354, 361 (7th Cir. 1997).

WHEREFORE, defendants Bombardier Recreational Products, Inc. and BRP U.S., for the reasons stated above, respectfully requests this Court to dismiss plaintiffs' Complaint against them or, in the alternative, stay plaintiffs' action against them pending arbitration.

SANDBERG PHOENIX & von GONTARD P.C.

By: /s/ John S. Sandberg
John S. Sandberg
Aaron D. French
600 Washington Avenue - 15th Floor
St. Louis, MO 63101-1313
314-231-3332
314-241-7604 (Fax)
E-mail: jsandberg@sandbergphoenix.com
afrench@sandbergphoenix.com

Attorneys for Defendants
*Bombardier Recreational Products, Inc.*
*and BRP U.S.*

## Certificate of Service

I hereby certify that on the __25th___ day of ___October_____, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Thomas Q. Keefe, Jr.
6 Executive Woods Ct.
Swansea IL 62226-2016

Richard A. Mueller
Steven E. Garlock
David B. Jinkins
Jonathan G. Musch
Thompson Coburn LLP
One US Bank Plaza
St. Louis, MO 63101
***Attorneys for Plaintiffs***

Christopher W. Byron
Christopher J. Petri
Ronald L. Pallmann
Byron Gerber Petri & Kalb, LLC
241 North Main Street
Edwardsville, IL 62025
***Attorneys for Defendants***
***Hary Marcus and Robert Goethals***

/s/ *John S. Sandberg*