IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**KAWASAKI HEAVY INDUSTRIES, LTD.**
**a/k/a KAWASAKI JUKOGYO**
**KABUSHIKI KAISHA and KAWASAKI**
**MOTORS MANUFACTURING CORP.,**
**U.S.A.,**

    Plaintiffs,                            Case No. 3:10-cv-00641-DRH-DGW

v.

**BOMBARDIER RECREATIONAL**
**PRODUCTS, INC., BRP U.S., INC.,**
**BANK OF MONTREAL (in the capacity**
**as administrative agent), HARRY**
**MARCUS, and ROBERT GOETHALS**

    Defendants.

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

### I. Introduction

Presently before the Court is defendants Bombardier Recreational Products, Inc. ("BRP") and BRP U.S., Inc.'s ("BRP U.S.") (collectively referred to as "defendants" or "the BRP parties") motion to dismiss, or in the alternative, to stay plaintiffs' action pending arbitration and supporting memorandum (Doc. 28). Plaintiffs Kawasaki Heavy Industries, Ltd.'s ("KHI") and Kawasaki Motors Manufacturing Corp., U.S.A. ("KMM") (collectively referred to as "plaintiffs" or "Kawasaki") filed an opposition to defendants' motion to dismiss, or in the

alternative, to stay plaintiffs' action pending arbitration (Doc. 48). For the reasons stated below, the Court denies defendants' motions to dismiss, or in the alternative, to stay plaintiffs' action pending arbitration.

## II. Background

### A. The BRP/Kawasaki Litigation

This dispute arises out of several cases filed between February 2006 and April 2007 between Kawasaki and the BRP Parties involving numerous allegations of patent infringement (Doc. 2, ¶ 1). The relevant cases are: *Bombardier Recreational Products, Inc. and BRP-US, Inc. v. Kawasaki Heavy Industries, Ltd. et al.*, Case No. 06-cv-JA-JGG, filed in the Middle District of Florida (the "Florida Litigation"); *Kawasaki Heavy Industries, Ltd. v. Bombardier Recreational Products, Inc. and BRP-US, Inc.*, Case No. 06-cv-222-DF, filed in the Eastern District of Texas (the "Texarkana Litigation"); and *Bombardier Recreational Products, Inc. and BRP-US, Inc. v. Kawasaki Heavy Industries, Ltd. et al.*, Case No. 07-cv-156-LED, also filed in the Eastern District of Texas (*Id.* at ¶¶ 12, 14-15). In relation to the Florida Litigation, Kawasaki also requested reexamination of three BRP patents from the United States Patent and Trademark Office, concerning Patent Nos. 6,336,833 (Control No. 90/008222), 6,405,669 (Control No. 95/000179), and 6,428,371 (Control No. 95/000163) (*Id.* at ¶ 13).

### B. The BRP/Kawasaki Settlement Agreement

In September 2007, Kawasaki and the BRP parties reached an agreement in principle to settle the disputes alleged in the various lawsuits (*Id.* at ¶

16). This settlement agreement contained an alternative dispute resolution provision in which the parties mutually agreed to arbitrate "any claim, dispute or controversy between the parties arising out of or relating to [the] Settlement Agreement." (Doc. 28, Ex. A, pp. 15-16.).[1] Additionally, pursuant to the settlement agreement, the BRP parties were to obtain an agreement from the Bank of Montreal ("Bank of Montreal" or "the Bank") to subordinate certain security interests the Bank possessed in the BRP parties' patent portfolio on behalf of several secured lenders to the BRP parties (Doc. 2, ¶¶ 17-18). This subordination agreement would prevent the Bank in the event of a foreclosure from taking the patents free of a covenant not to sue which the BRP parties had granted Kawasaki (Doc. 48, p. 2).

Prior to executing the settlement agreement, Kawasaki requested confirmation from the BRP parties that the Bank was willing to subordinate its security interest (Doc. 2, ¶ 18). In response to this request, counsel for the BRP

---

[1] The arbitration clause reads as follows:
Any claim, dispute or controversy between the parties arising out of or relating to this Settlement Agreement shall be resolved by first a personal meeting between representatives of each party to the matter, with such representatives having the power to resolve the matter on behalf of their company. Should a resolution fail to be reached through a personal meeting or should either party refuse or fail to reasonably attend a personal meeting, the party asserting such dispute shall provide notice to the other party of its intention to submit the dispute to non-binding mediation, each party agrees to submit the dispute to non-binding mediation to be held in Dallas, Texas. Each party will bear its own costs. There will be no discovery in such proceeding other than a specific factual identification of the alleged breach and the response thereto. Should a resolution fail to be reached through non-binding mediation or should either party refuse or fail to reasonably participate in the non-binding mediation, each party agrees to submit the dispute to binding arbitration to be held in Dallas, Texas. Each party will bear its own costs. The arbitration will be conducted in accordance with the prevailing arbitration rules of the American Arbitration Association for the Complex Commercial Litigation or such other rules as the parties may agree. The arbitrator shall render a reasoned award, setting forth findings of fact and conclusions of law upon which the award is based. The award shall be final and binding upon both parties. Judgment upon the award may be entered in any court having jurisdiction thereof.

parties, defendants Robert Goethals and Harry Marcus, sent an email stating that "BRP has just received word that the Bank of Montreal will agree to subordinate the security interests." (*Id.* at ¶ 19). In reliance on this representation, Kawasaki and the BRP parties finalized the settlement agreement, which became effective on March 31, 2008 (*Id.* at ¶ 20; *see also* Doc. 28, Ex. A, pp. 13, 18). Pursuant to the settlement agreement, the parties timely dismissed their respective patent lawsuits (Doc. 2, ¶ 22). Shortly thereafter, counsel to the BRP parties informed Kawasaki "that it is taking longer than expected to work with the Bank to prepare and execute the subordination documents" and that "it will take an additional 15 days beyond the 10 day period provided in the settlement agreement." (*Id.* at ¶ 23). Kawasaki expressed concern that the BRP parties would not fulfill their obligations under the settlement agreement, to which counsel for the BRP Parties replied:

> "[t]he unexpected delay we are encountering with the subordination agreement results from having to work with the bank's attorneys. We discussed the need for the subordination agreement with the bank before finalizing the settlement agreement and we don't expect any problems with obtaining the subordination agreement. However, we cannot dictate the timeframe for finalizing it since we are dealing with another party."

(*Id.* at ¶ 24). Shortly after this statement, Kawasaki fully performed its obligations under the settlement agreement (*Id.*).

On May 14, 2008, the BRP parties informed Kawasaki that they were not going to provide the required subordination agreement from the Bank (*Id.* at ¶ 25). In response, Kawasaki sought to vacate the stipulated dismissal of the Texarkana Litigation on April 1, 2009 (Case No. 5:06-cv-222, Doc. 28, Ex. C). Both parties

participated in briefing before the United States District Court for the Eastern District of Texas (Doc. 48, pp. 5-6), which ultimately denied Kawasaki's motion (Doc. 28, Ex. D); this decision was upheld on appeal.

Kawasaki subsequently filed suit in this Court on August 23, 2010, against the BRP parties, as well as the Bank, Goethals, and Marcus (these three parties being hereafter collectively referred to as the "non-signatory parties" or "non-signatories"), requesting specific performance of the BRP parties' obligations under the settlement agreement, or in the alternative, asserting against varying defendants claims for breach of contract, fraud, fraud in the inducement, negligent misrepresentation, negligence, breach of a third party beneficiary contract, and tortious interference, and seeking damages accordingly (*See generally* Doc. 2).[2] Against the BRP parties specifically, Kawasaki alleged breach of the settlement agreement, fraud, fraud in the inducement, negligent misrepresentation, and negligence (*Id.*).

In response, the BRP parties filed the motion presently before the Court.

### III. Discussion

The defendants contend that this Court should dismiss Kawasaki's claims or, in the alternative, to stay those claims pending arbitration pursuant to the

---

[2]Specifically, plaintiffs seek specific performance of the settlement agreement in Count I. In the alternative, plaintiffs allege a claim for the breach of the settlement agreement in Count II. In Counts III, IV, V and VI, plaintiffs assert claims for fraud, fraud in the inducement, negligent misrepresentation, negligent misrepresentation and negligence against the BRP parties, Marcus and Geothals. Further, in Counts VII and VIII, plaintiffs allege claims for breach of a third party beneficiary contract and tortious interference against the Bank of Montreal.

Federal Arbitration Act ("FAA"). Specifically, the BRP parties argue that plaintiffs' claims arise out of and relate to the settlement agreement between plaintiffs and themselves, thus, these claims are subject to the arbitration clause contained in the settlement agreement. In response, Kawasaki argues that (i) the BRP parties have waived any claim to arbitration they may have; (ii) the Bank and other non-signatory parties do not have the right to participate in the arbitration; and (iii) the claims against the non-signatory parties are not affected by the instant breach of contract claim. Based on the following, the Court agrees with plaintiffs.

**A.     Jurisdiction**

The FAA does not by itself confer subject matter jurisdiction over any dispute; rather, "there must be diversity of citizenship or some other independent basis for federal jurisdiction" to address a dispute relating to an arbitration provision. *America's Moneyline, Inc. v. Coleman*, 360 F.3d 782, 784-85 (7th Cir. 2004) (internal quotation and citation omitted). As such, this Court may issue "an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute." *Id.* at 785 (emphasis omitted). The BRP parties are seeking to arbitrate the plaintiffs' claims relating to breach of the settlement agreement; as a state law contract matter, the Court must determine whether there is complete diversity and whether the requisite jurisdictional amount has been met in order to assert jurisdiction. *See* 28 U.S.C. § 1332.

In order to establish diversity in its complaint, the plaintiffs allege that: (1) KHI is a Japanese corporation with a principal place of business in Japan; (2)

KMM is a Nebraska corporation with its principal place of business in Nebraska; (3) BRP-CA is a Canadian corporation with its principal place of business in Canada; (4) BRP-US is a Delaware corporation with its principal place of business in Wisconsin; (5) the Bank is a Canadian corporation with its principal place of business in Canada; and (6) Robert Goethals and Harry Marcus are residents of the state of New York (Doc. 2, ¶¶ 5-11). While the parties dispute whether or not the non-signatories are ultimately subject to the arbitration provision, the Court finds that there is complete diversity of citizenship for purpose of evaluating jurisdiction.

As to the amount in controversy, "[i]n the context of actions to compel arbitration, . . . in order to ascertain whether the jurisdictional amount for the diversity statute has been met, the appropriate focus is the stakes of the underlying arbitration dispute." *America's Moneyline*, 360 F.3d at 786. "In deciding whether a claim meets the minimum amount in controversy, the plaintiff's evaluation of the stakes must be respected." *Barbers, Hairstyling for Men & Women, Inc. v. Bishop*, 132 F.3d 1203, 1205 (7th Cir. 1997). So long as it is not "legally certain that the stakes of the arbitration would be $75,000 or less . . . , then the claim satisfies the jurisdictional minimum." *Id.* The plaintiffs have alleged that the property rights at issue in the underlying dispute which the BRP parties are seeking to arbitrate exceed $75,000 in value.

Finding the amount in controversy requirement to have been met, the Court now considers the merits of the motion presently before it. When a party seeks to invoke an arbitration clause, the proper procedure is to stay the proceedings

rather than dismiss them outright. *See Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 732 n. 7 (7th Cir. 2002). Accordingly, the Court will review the motion to determine whether arbitration is appropriate.

    **B.**    **Waiver of Rights of Arbitration**

The Federal Arbitration Act ("FAA") was originally enacted "… to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). "Its primary substantive provision states that '[a] written provision in any maritime transaction or contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract.'" *Id.* at 24-25 (quoting 9 U.S.C. § 2). Section 3 of the FAA provides for stays of proceedings where the issue therein is referable to arbitration, and § 4 provides for the court's entering an order compelling arbitration where a party has failed to arbitrate under the agreement. 9 U.S.C. §§ 3, 4.

"The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H Cone Memorial Hosp. v. Mecury Const. Corp.*, 460 U.S. 1, 24-25 (1983). However,

this policy is not absolute, and courts may decline to enforce an arbitration provision for any number of reasons. *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum*, 969 F.2d 585, 587 (7th Cir. 1992). "[F]ederal courts have consistently held that among those grounds is waiver of the right to arbitrate." *Id.* The contractual right to arbitrate may be expressly or implicitly waived. *Cabinetree of Wisc., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390-91 (7th Cir. 1995). Absent an express waiver of the right to arbitrate, the Court must "determine whether based on all the circumstances, the party against whom the waiver is to be enforced has acted inconsistently with the right to arbitrate." *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) (internal citation omitted). "Although a variety of factors may be considered, diligence or a lack thereof should weigh heavily in the court's determination of whether a party implicitly waived its right to arbitrate." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008).

Although the case at bar which the BRP parties are seeking to dismiss or stay was only initiated approximately six months ago, the dispute between the BRP parties and Kawasaki over the settlement agreement and its subordination requirement has been going on for nearly two years. *See St. Mary's Med. Ctr.*, 969 F.2d at 589 (finding that a demand for arbitration filed 10 months after being sued, when the party seeking arbitration had otherwise been participating in the litigation for two years, was inconsistent with an intent to arbitrate). The BRP parties claim that they did not yet deem it necessary to abandon the parties' efforts to resolve the dispute without outside intervention (Doc. 53, p 6). However, counsel for the BRP

parties raised the issue of the arbitration provision two years before the filing of the present action (Doc. 28, Ex. B), without further pursuing the matter.

The record reveals that the BRP parties submitted briefs before the Eastern District of Texas when Kawasaki sought to vacate the stipulated dismissal of the Texarkana Litigation; they also participated in Kawasaki's appeal of the order denying that motion. Also during that time, the BRP parties participated in the Federal Circuit's mediation program. The BRP parties did not move to stay or dismiss the litigation or move to strike plaintiffs' motion. Although the BRP parties note that their involvement in the renewed Texarkana Litigation was limited to a challenge to subject matter jurisdiction, this does not override the two year delay in asserting their right to arbitrate. *See St. Mary's Med. Ctr.*, 969 F.2d at 591 (noting that a delay in demanding arbitration caused the opposing party to endure two years of litigation expenses that could otherwise have been avoided). Simply put, the BRP parties failed to seek an order to arbitrate or stay at the first opportunity. *See Cabinetree of Wisc., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 888, 390-91 (7th Cir. 1995)(party in breach moved for stay of litigation after first electing to remove the originally filed state court action to Federal court. The Seventh Circuit found that the election of the judicial process and participation constituted a presumptive waiver of the right to arbitrate.). The Court finds that the BRP parties have acted inconsistently with the intent to arbitrate and thus implicitly waived their right to arbitrate.

### C. Non-Signatories May Not Be Compelled to Arbitrate

As a preliminary observation, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to arbitrate." *Grundstad v. Ritt*, 106 F.3d 201, 204 (7th Cir. 1997) (quoting *AT&T Tech., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 648 (1986)) (internal citations omitted). Unless ordinary rules of contract and agency provide a basis for requiring non-signatories to arbitrate, a non-signatory is not bound by an arbitration agreement between other parties. *Zurich American Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (internal citations omitted). However, there are exceptions to the rule. Because arbitration is a creature of contract law, there are certain principles of contract law that federal courts have applied in compelling arbitration even when there is not a written arbitration agreement between the relevant parties. There are five doctrines under which a non-signatory can be bound by an arbitration agreement entered into by others: (1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference. *Id.* at 687 (citing *Fyrnetics (Hong Kong) Ltd. v. Quantum Group, Inc.*, 293 F.3d 1023, 1029 (7th Cir. 2009)).

Here, the BRP parties argue that the claims against non-signatories Marcus, Goethals and the Bank of Montreal are so intertwined with the settlement agreement such that the non-signatories should be able to enforce the settlement agreement. Kawasaki asserts that the non-signatory parties cannot be compelled to arbitrate and that its claims against the non-signatory parties are not affected by and

would therefore not be resolved by resolution of the breach of contract claim against the BRP parties.

As non-signatories, defendants Goethals, Marcus, and the Bank are not bound by the settlement agreement. The BRP Parties have not articulated any theory under which the non-signatory parties can be bound, and the facts alleged do not support one. The BRP Parties argue that Kawasaki is attempting to avoid arbitration by adding nons-ignatory parties as defendants. They assert that the settlement agreement and its arbitration provision apply to the nonsignatory parties, arguing that plaintiffs' claims against the nonsignatory parties are so intertwined with the settlement agreement that the nonsignatory parties should be able to enforce the arbitration provision against the plaintiffs. The Court does not agree.

The claims against the BRP parties are not substantially the same as the claims against the non-signatory parties as any arbitration against the BRP parties would not resolve the claims against the non-signatories. Based on the allegations, plaintiffs would be unable to seek relief from the non-signatories in arbitration. The claims against Marcus and Goethals are based on their representations to plaintiffs; not breach of contract. Plaintiffs contend that these representations are independently actionable if the BRP parties failed to obtain an agreement with the Bank as the attorneys defendants represented to plaintiffs that it had been done. Furthermore, plaintiffs claims against the Bank are premised on the possibility that an agreement between the BRP parties and the Bank existed for the benefit of plaintiffs and *that* agreement was breached. This theory of liability against the Bank

is premised on a completely different agreement (one that would have required the Bank, upon execution of the settlement agreement, to enter into a subordination agreement concerning plaintiffs' rights) than the settlement agreement which contains the arbitration clause. If there was a subordination agreement as alleged, *that* dispute does not entail the settlement agreement. Accordingly, the arbitration clause in the settlement agreement does not apply to the non-signatory parties and cannot be enforce against them.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** the BRP parties' motion to dismiss plaintiff's complaint, or in the alternative, to stay plaintiffs' action pending arbitration (Doc. 28).

**IT IS SO ORDERED.**

Signed this 5th day of May, 2011.

Digitally signed by David R. Herndon
Date: 2011.05.05 13:32:01 -05'00'

**Chief Judge**
**United States District Court**