IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**KAWASAKI HEAVY INDUSTRIES, LTD.**
a/k/a KAWASAKI JUKOGYO
KABUSHIKI KAISHA and KAWASAKI
MOTORS MANUFACTURING CORP.,
U.S.A.,

    Plaintiffs,                          Case No. 3:10-cv-00641-DRH-DGW

v.

**BOMBARDIER RECREATIONAL
PRODUCTS, INC., BRP U.S., INC.,
BANK OF MONTREAL (in the capacity
as administrative agent), HARRY
MARCUS, and ROBERT GOETHALS**

    Defendants.

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

### I. Introduction

Pending before the Court is defendant Bank of Montreal's ("the Bank"), in its capacity as administrative agent for certain secured lenders, motion to dismiss plaintiffs' complaint and supporting memorandum (Doc. 35). Plaintiffs Kawasaki Heavy Industries, Ltd.'s ("KHI") and Kawasaki Motors Manufacturing Corp., U.S.A. ("KMM") (collectively referred to as "plaintiffs" or "Kawasaki") filed their opposition to defendant Bank of Montreal's motion to dismiss for improper venue and under Federal Rule 12(b)(6) (Doc. 49). For the reasons stated below, the Court denies

defendant's motion to dismiss plaintiffs' complaint.

## II. Background

The Court begins with the facts as alleged by Kawasaki in the complaint. KHI is a Japanese corporation with its principal place of business in Japan. KMM is a Nebraska corporation with its principal place of business in Nebraska. Bombardier Recreational Products, Inc. ("BRP-CA") is a Canadian corporation with its principal place of business in Canada. BRP U.S., Inc. ("BRP-US," and together with BRP-CA, "the BRP parties") is a Delaware corporation with its principal place of business in Wisconsin. The Bank is a Canadian corporation with its principal place of business in Canada. Robert Goethals and Harry Marcus are lawyers and residents of New York (Doc. 2, ¶¶ 5-11).

### A. The BRP/Kawasaki Litigation

The case at bar arises out of several cases filed in both Florida and Texas from February 2006 and April 2007 between Kawasaki and the BRP parties, involving numerous allegations of patent infringement (Doc. 2, ¶ 1). In relation to one of these lawsuits, Kawasaki also requested reexamination of three BRP patents from the United States Patent and Trademark Office, concerning Patent Nos. 6,336,833 (Control No. 90/008222), 6,405,669 (Control No. 95/000179), and 6,428,371 (Control No. 95/000163) (*Id.* at ¶ 13).

### B. The BRP/Kawasaki Settlement Agreement and Alleged Subordination Agreement

In September 2007, Kawasaki and the BRP parties reached an

agreement in principle to settle the disputes alleged in the various lawsuits (*Id.* at ¶ 16; Doc. 28, Ex. A). Pursuant to the settlement agreement, the BRP parties were to obtain an agreement from the Bank to subordinate certain security interests the Bank possessed in the BRP parties' patent portfolio (*Id.* at ¶¶ 17-18). The Bank holds these security interests as administrative agent on behalf of several secured lenders to the BRP parties (Doc. 35, p. 3). The complaint further alleges that obtaining a subordination agreement would allow Kawasaki to use the BRP parties' patents without fear of future patent infringement should the Bank foreclose on the security interests. (Doc. 49, p. 9).

Prior to executing the settlement agreement, Kawasaki requested confirmation from the BRP parties that the Bank was willing to subordinate its security interest (Doc. 2, ¶ 18). In response to this request, counsel for the BRP parties, defendants Robert Goethals and Harry Marcus, sent an email stating that "BRP has just received word that the Bank of Montreal will agree to subordinate the security interests." (*Id.* at ¶ 19). In reliance on this representation, Kawasaki and the BRP parties finalized the settlement agreement, which became effective on March 31, 2008 (*Id.* at ¶ 20; *see also* Doc. 28, Ex. A, pp. 13, 18). Pursuant to the settlement agreement, the parties timely dismissed their respective patent lawsuits (Doc. 2, ¶ 22). Shortly thereafter, counsel to the BRP parties informed Kawasaki "that it is taking longer than expected to work with the Bank to prepare and execute the subordination documents" and that "it will take an additional 15 days beyond the 10 day period provided in the Settlement Agreement." (*Id.* at ¶ 23). Kawasaki expressed

concern that the BRP parties would not fulfill their obligations under the settlement agreement, to which counsel for the BRP parties replied:

> "[t]he unexpected delay we are encountering with the subordination agreement results from having to work with the bank's attorneys. We discussed the need for the subordination agreement with the bank before finalizing the settlement agreement and we don't expect any problems with obtaining the subordination agreement. However, we cannot dictate the timeframe for finalizing it since we are dealing with another party."

(*Id.* at ¶ 24). Shortly after this statement, Kawasaki fully performed its obligations under the settlement agreement (*Id.*). On May 14, 2008, the BRP parties informed Kawasaki that they were not going to provide the required subordination agreement from the Bank (*Id.* at ¶ 25).

Kawasaki subsequently filed suit in this Court on August 23, 2010, against the BRP parties, as well as the Bank, Goethals, and Marcus, requesting specific performance of the BRP parties' obligations under the settlement agreement, or in the alternative, asserting against varying defendants claims for breach of contract, fraud, fraud in the inducement, negligent misrepresentation, negligence, breach of a third party beneficiary contract, and tortious interference, and seeking damages accordingly (*See generally* Doc. 2). Against the Bank specifically, Kawasaki alleged breach of a third-party beneficiary contract and tortious interference with the settlement greement (Doc. 2, pp. 13-15).

In response, the Bank filed the motion dismiss. The Bank contends that this Court should dismiss Counts VII and VIII, and Count I to the extent it applies to the Bank, for improper venue. In the alternative, the Bank asks the Court to dismiss

counts VII and VIII, and Count I to the extent it applies to the Bank, for failure to state a claim on which relief can be granted, pursuant to Rule 12(b)(6).

### III. Discussion

#### A. Improper Venue

When considering a motion to dismiss under Rule 12(b)(3), the plaintiff bears the burden of establishing proper venue. *See Bremen v. Zapata Off Shore Co.*, 407 U.S. 1, 18 (1972); *Grantham v. Challenge-Cook Bros., Inc. et al.*, 420 F.2d 1182, 1184 (7th Cir. 1969). The Court must take all allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and may consider matters outside the complaint without converting the motion to one for summary judgment. *Faulkenberg v. CB Tax Franchise Systems, LP*, 2011 WL 1125592 *3 -7 (7th Cir. March 29, 2011). In diversity cases, 28 U.S.C. § 1391(a) applies to venue. It reads:

"(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . . or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought."

28 U.S.C. § 1391(a). Further, 28 U.S.C. § 1391(d) provides: "[a]n alien may be sued in any district."

The Bank argues that none of the provisions of 1391(a) allow for venue in this judicial district. Specifically, the Bank argues: that (1) does not allow for proper venue in this district because not all the defendants reside in Illinois; that (2)

does not allow for proper venue in this district as the actions on which plaintiffs base their claims occurred in either Florida, Texas, or New York, not in Illinois; and that (3) does not allow for proper venue because that provision is only applicable if no other judicial district exists in which plaintiffs could have filed suit. Plaintiffs contend that venue is proper as to the Bank, an alien corporation, and that improper venue is personal and can only be raised the entity to whom which venue is improper. At this stage in the proceedings, the Court agrees with plaintiffs.

As a foreign corporation, the Bank is an alien and may be sued in any district.[1] Thus, plaintiffs may bring these claims against the Bank in this judicial district. Furthermore, the Bank failed to raise lack of personal jurisdiction as a defense in its motion to dismiss, thereby waiving that defense. Fed.R.Civ.P. 12(h)(1). Unlike subject matter jurisdiction, personal jurisdiction and venue represent a restriction on judicial power not as a matter of sovereignty, but as a matter of liberty. *Id*. at 702-03; (personal jurisdiction); *Interior Const. & Imp. Co. v. Gibney*, 160 U.S. 217, 219-20 (1895)(venue). As a result, both are waivable by the affected parties, and therefore, cannot be raised on their behalf by anyone else. *Vance Trucking Co. v. Canal Ins. Co.*, 338 F.2d 943, 944 (4th Cir. 1964)(citing *Camp v. Gress*, 250 U.S. 308 (1919)). Therefore, the Court determines that venue is proper in this district as to the Bank. Further, the Court will address the issue regarding venue when it

---

[1] The Bank is a Canadian chartered institution with its primary place of business in Montreal, Canada. In its Motion to Dismiss, the Bank asserts that, although it is chartered in Canada, it operates and acts in the United States through a branch in Chicago that is licensed under the Illinois Banking Office Act (Doc. 35, p. 3). However, this assertion only supports the underlying fact that it is an alien corporation.

renders its decision on defendants Marcus and Goethals' not yet ripe motion to dismiss.

**B.     Failure to State a Claim**

A 12(b)(6) motion challenges the sufficiency of the complaint to state a claim upon which relief can be granted. *Hallinan v. Fraternal Order of Police Chicago Lodge 7*, 570 F.3d 811, 820 (7th Cir.), *cert. denied,* ––– U.S. ––––, 130 S.Ct. 749, 175 L.Ed.2d 517 (2009). The United States Supreme Court explained in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), that Rule 12(b)(6) dismissal is warranted if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face."

In making this assessment, the district court accepts as true all well-pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *See* Rujawitz v. Martin, 561 F.3d 685, 688 (7th Cir. 2009); *St. John's United Church of Christ v. City of Chicago,* 502 F.3d 616, 625 (7th Cir. 2007), *cert. denied,* 553 U.S. 1032, 128 S.Ct. 2431, 171 L.Ed.2d 230 (2008).

Even though *Twombly* (and *Ashcroft v. Iqbal,* ––– U.S. ––––, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) retooled federal pleading standards, notice pleading remains all that is required in a complaint. "A plaintiff still must provide only 'enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.' " *Tamayo v. Blagojevich,* 526 F.3d 1074, 1083 (7th Cir. 2008). The level of detail the complaint must furnish can differ

depending on the type of case before the Court. So for instance, a complaint involving complex litigation (antitrust or RICO claims) may need a "fuller set of factual allegations ... to show that relief is plausible." *Tamayo,* 526 F.3d at 1083, *citing Limestone Dev. Corp. v. Village of Lemont, Illinois,* 520 F.3d 797, 803–04 (7th Cir. 2008).

The Seventh Circuit Court of Appeals has offered further direction on what (post- *Twombly & Iqbal* ) a complaint must do to withstand dismissal for failure to state a claim. In *Pugh v. Tribune Co.,* 521 F.3d 686, 699 (7th Cir. 2008), the Court reiterated: "surviving a Rule 12(b)(6) motion requires more than labels and conclusions;" the allegations must "raise a right to relief above the speculative level." Similarly, the Court remarked in *Swanson v. Citibank, N.A.,* 614 F.3d 400, 403 (7th Cir. 2010): "It is by now well established that a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law."

More recently, Judge Posner explained that *Twombly* and *Iqbal:*

> require that a complaint be dismissed if the allegations do not state a plausible claim. The Court explained in *Iqbal* that "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949. This is a little unclear because plausibility, probability, and possibility overlap....
>
> But one sees more or less what the Court was driving at: the fact that the allegations undergirding a plaintiffs claim could be true is no longer enough to save it. .... [T]he complaint taken as a whole must establish a nonnegligible probability that the claim is valid, though it need not be so great a probability as such terms as "preponderance of the evidence" connote.... After *Twombly* and *Iqbal* a plaintiff to survive dismissal

"must plead some facts that suggest a right to relief that is beyond the 'speculative level.' " *In re marchFIRST Inc.,* 589 F.3d 901, 905 (7th Cir. 2009).

*Atkins v. City of Chicago,* 631 F.3d 823, 831–32 (7th Cir.2011) (emphasis added). *See also Smith v. Medical Benefit Administrators Group, Inc.,* –––F.3d –––, 2011 WL 913085 (7th Cir. March 15, 2011) (Plaintiff's claim "must be plausible on its face," that is, "The complaint must establish a nonnegligible probability that the claim is valid...."). With these principles in mind, the Court turns to plaintiffs' complaint.

### i. Count VII - Breach of a Third-Party Beneficiary Contract

In order to state a claim for breach of contract under Illinois law, a plaintiff must allege: (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resultant injury to the plaintiff. *Sherman v. Ryan*, 911 N.E.2d 378, 397 (Ill. App. 2009) (internal citation omitted). An individual or entity who is not a party to a contract may enforce the contract's rights only when the contract's original parties intentionally entered into the contract for the direct benefit of the individual or entity. *Martis v. Grinnell Mut. Reins. Co.*, 905 N.E.2d 920, 924 (Ill. App. 2009). Whether someone is a third-party beneficiary depends on the intent of the contracting parties, as evidenced by the contract language. *Id.* (internal citation omitted). A nonparty may be considered a third-party beneficiary to a contract if the contracting parties, or at least the promisee, intended to confer a benefit on that party. *Bates & Rogers Constr. Corp.*

*v. Greeley & Hansen*, 486 N.E.2d 902, 906 (Ill. 1985).

Kawasaki alleges that, according to representations made to Kawasaki by the BRP parties, the BRP parties and the Bank agreed to enter into an agreement subordinating the Bank's interests in the BRP parties' patent portfolio following the execution of the settlement agreement. This subordination agreement was intended to permit Kawasaki to exercise the BRP parties' patent portfolio without fear of future patent infringement. The subordination agreement could not be entered into until the settlement agreement was executed, as Kawasaki's rights in the patent portfolio would not exist until the Settlement Agreement became effective. Once Kawasaki and the BRP parties did execute the settlement agreement, however, the Bank refused to honor its agreement to enter into a subordination agreement. The breach of this agreement by the Bank reduced the value of the property rights granted to Kawasaki.

### ii. Count VIII - Tortious Interference

To establish tortious interference with contractual rights, Kawasaki must allege: "(1) the existence of a contract; (2) the defendants' awareness of the contract; (3) the intentional inducement of a contract breach; (4) an actual breach of the contract; and (5) damages." *Cody v. Harris*, 409 F.3d 853, 859 (7th Cir. 2005).

Kawasaki alleges that the settlement agreement was a valid contract between it and the BRP parties. The agreement to subordinate the Bank's security interests in the BRP parties' patent portfolio, reached between the Bank and the BRP parties, was made expressly in recognition of and to prioritize Kawasaki's rights in the portfolio as would be created by the settlement agreement. The Bank then

intentionally refused to honor its agreement to subordinate, causing the BRP parties to breach the settlement agreement through failure to fulfill their obligation to obtain a subordination agreement from the Bank. This interference by the Bank with the BRP parties' ability to fulfill their obligations under the settlement agreement reduced the value of the property rights granted to Kawasaki.

### iii. Analysis of Sufficiency of Kawasaki's Complaint

Kawasaki's claim for breach of a third-party beneficiary contract by the Bank, for failing to perform on the agreement to enter into a subordination agreement, as well as its claim for tortious interference with the settlement agreement, are plead in the alternative to claims for fraud against the BRP parties and their counsel. Whereas the claims against the Bank depend on an agreement to subordinate between the BRP parties and the Bank followed by the Bank's failure to honor that agreement, thereby interfering with the fulfillment of the BRP parties' obligations under the settlement agreement, the alternative claims against the BRP parties and their counsel rely on false statements by the BRP parties and their counsel that an agreement to subordinate did exist when it fact it did not. While the Bank argues that Count VII should be dismissed because no subordination agreement between it and the BRP parties exists, it misinterprets Kawasaki's complaint as alleging the existence of a subordination agreement, rather than an agreement *to enter into* a subordination agreement. A subordination agreement would not be effective until Kawasaki's rights in the patent portfolio were created; Kawasaki is alleging that the Bank and the BRP parties agreed to execute such a

subordination agreement *following* the execution of the settlement agreement.

The Court finds that Kawasaki has plead sufficient facts to give the defendants fair notice of the nature of the claim against them. Although Kawasaki has plead alternate theories of liability depending on the nature of the discussions between the BRP parties and the Bank, the Court gives Kawasaki "the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Bausch v. Stryker Corp.*, 630 F.3d 546 (7th Cir. 2010) (citations omitted). While Kawasaki is lacking information as to the nature of the discussions between the BRP parties and the Bank, its alternate theories of liability are consistent with the complaint's factual allegations.

The Bank additionally asserts that its actions which are alleged to have interfered with the settlement agreement and agreement to subordinate were privileged. However, an affirmative defense can be the basis for a Rule 12(b)(6) only where "the complaint alleges facts that create an ironclad defense;" otherwise, such defenses "must await factual development." *Foss v. Bear, Stearns, & Co.*, 394 F.3d 540, 542 (7th Cir. 2005). While the Bank notes that Illinois recognizes a privilege "where the defendant was acting to protect an interest which the law deems to be of equal or greater value than the plaintiff's contractual right," Doc. 35, p. 13 (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672 (Ill. 1989), this conditional privilege is most often afforded to individuals acting within the scope of certain recognized relationships. *See*, e.g., *Certified Mech. Contractors, Inc. v. Wight & Co., Inc.*, 515 N.E.2d 1047 (Ill. 1987) (recognizing that an architect or engineer has

a conditional privilege to interfere with the construction contract of its principal); *Swager v. Couri*, 395 N.E.2d 921 (Ill. 1979) (finding, as individual defendants, directors and officers' actions in dissolving corporation to be conditionally privileged); *H.F. Philipsborn & Co. v. Suson*, 322 N.E.2d 45 (Ill.1974) (noting that "corporate officer[s] may, for a proper business purpose and in good faith, influence the actions of the corporation). However, until further facts establish that the Bank's actions were indeed protected by a privilege, the Court declines to consider this affirmative defense at this time and finds Kawasaki's complaint to be sufficient to survive the instant motion.

## IV. Conclusion

Accordingly, the Court DENIES the Bank's Motion to Dismiss Plaintiffs' Complaint (Doc. 35).

**IT IS SO ORDERED.**

Signed this 9th day of May, 2011.

Digitally signed by David R. Herndon
Date: 2011.05.09 17:40:36 -05'00'

**Chief Judge**
**United States District Court**