**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| KAWASAKI HEAVY INDUSTRIES, LTD. | ) | |
| (a/k/a KAWASAKI JUKOGYO KABUSHIKI | ) | |
| KAISHA) and KAWASAKI MOTORS | ) | |
| MANUFACTURING CORP., U.S.A., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:10-cv-00641-DRH-DGW |
| | ) | |
| vs. | ) | |
| | ) | |
| BOMBARDIER RECREATIONAL | ) | |
| PRODUCTS, INC., BRP U.S., INC., BANK | ) | |
| OF MONTREAL (in its capacity as | ) | |
| administrative agent), HARRY MARCUS, and | ) | |
| ROBERT GOETHALS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**
**LISTED ON BRP'S AND ATTORNEY DEFENDANTS' PRIVILEGE LOGS AND**
**FURTHER TO COMPEL RESPONSE TO REQUESTS FOR ADMISSION AND**
**INCORPORATED MEMORANDUM IN SUPPORT**

**INTRODUCTION**

Plaintiff Kawasaki Heavy Industries, Ltd. and Kawasaki Motors Manufacturing, Corp.

USA (collectively "Kawasaki") hereby request the Court compel production of certain

documents listed on the April 6, 2011 supplemental privilege log of Defendants Bombardier

Recreational Products, Inc. and BRP U.S., Inc.'s (collectively "BRP") and the February 22, 2011

privilege log of Defendants Harry Marcus and Robert Goethals (collectively "Attorney

Defendants").[1]  Because BRP (as the client of the Attorney Defendants and owner of the

privilege) have waived the attorney-client privilege, and because the crime-fraud exception

applies, Kawasaki requests that the following documents be produced: BOMBARDIER 4; 82-88;

111-119; 211-216; 222-223; 327; 420; 423-425; 439-449; 497- 499; 501; 515-516; 522-531; 614;

616-617; and MG 10-12 and 28-39.  Kawasaki additionally requests that Attorney Defendants be

---

[1] The privilege logs are attached as Exhibits 1 and 2, respectively.

compelled to respond to requests for admission 1 through 6 without claiming attorney-client privilege because their objections are based on MG 11, which is not privileged under waiver and the crime-fraud exception.  Kawasaki additionally requests that BRP be required to respond fully to request for admissions numbers 7 and 8.

First, a BRP employee, Stephanie Vaillancourt, forwarded privileged communications from in-house counsel to the Bank of Montreal ("BMO"), thus waiving attorney-client privilege as to other privileged communications of the same subject matter.  Only certain forwarded communications on that subject matter have been produced.  Second, the attorney-client privilege and work-product doctrine must be pierced under the crime-fraud exception.  BRP and Attorney Defendants fraudulently misrepresented to Kawasaki that BMO had agreed to subordinate its security interest in BRP's patents to Kawasaki in order to obtain Kawasaki's consent to the settlement agreement.  Finally, the work-product doctrine should not be applied because Kawasaki has a substantial need for the documents and it is impossible to obtain them elsewhere.

## BACKGROUND

This dispute arises from a series of patent infringement suits between Kawasaki and BRP, in which BRP was represented by Attorney Defendants.  Kawasaki and BRP entered into a settlement agreement which, by virtue of mutual covenants not to sue, permitted both sides to practice all the patents in their respective portfolios for use in small jet-propelled watercraft. ECF No. 28-1, at 7-9; ECF No. 48-1.  During the negotiations, Kawasaki learned that a substantial portion of BRP's patent portfolio had been pledged as security for a loan held by a group of creditors led by BMO.  ECF No. 28-1, at 7; 48-2.  Kawasaki requested that BRP make the security agreement subordinate to the settlement agreement to prevent the possibility that a

foreclosure on the patent portfolio would make BRP's covenant not to sue worthless. As an inducement to sign the settlement agreement, BRP and the Attorney Defendants represented in writing to Kawasaki that BMO had assured BRP that BMO would subordinate its security interest to the rights Kawasaki would be granted under the settlement. ECF No. 48-2. Based on that written representation, Kawasaki entered into the settlement agreement. BRP did not obtain the agreed-on subordination. These representations were false and made to fraudulently induce Kawasaki into entering into the agreement. In other words, contrary to BRP's representations, it appears unlikely that BRP could satisfy the apparent requirements placed on it to subordinate the security interest.

Kawasaki brought this action to enforce the settlement agreement or, alternatively, for fraud and fraud in the inducement. On January 19, 2011, Kawasaki served its first set of requests for production of documents on both BRP and Attorney Defendants. Both parties have withheld a number of documents based on assertions of the attorney-client privilege and work-product doctrine. *See* Exhibits 1 and 2. Because BRP's and Attorney Defendants' objections are improper, at least the following documents should be produced: BOMBARDIER 4; 82-88; 111-119; 211-216; 222-223; 327; 420; 423-425; 439-449; 497- 499; 501; 515-516; 522-531; 614; 616-617; and MG 10-12 and 28-39. Further, because Attorney Defendants' objection to Kawasaki's requests for admission 1 through 6, *see* ECF Nos. 74 and 75, under the attorney-client privilege is based on MG 11, which is not protected by the privilege, Attorney Defendants must respond. Likewise, the court should order full responses to requests for admissions numbers 7 and 8 directed to BRP, *see* ECF Nos. 76 and 77.

**ARGUMENT**

**I.    ATTORNEY-CLIENT PRIVILEGE**

### A.  Governing Law

Because Kawasaki's action was brought in the federal courts pursuant to diversity jurisdiction, 28 U.S.C. § 1332, the attorney-client privilege is governed under Illinois and not federal law.  Fed. R. Civ. P. 501; *see also Dunn v. Washington County Hosp.*, 429 F.3d 689, 693 (7th Cir. 2005).  However, the work-product doctrine is still controlled by federal law. *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 321 (N.D. Ill. 2008).

### B.  General Principles and Elements of Attorney-Client Privilege Under Illinois Law

Under Illinois law, the attorney-client privilege—not the duty to disclose—is the exception.  Illinois "adhere[s] to a strong policy of encouraging disclosure"; thus, the privilege is "strictly confined within its narrowest possible limits."  *Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322, 326-27 (Ill. 1991) (internal citations and quotations omitted); *see also Mueller Indus., Inc. v. Berkman*, 927 N.E.2d 794, 803 (Ill. App. Ct. 2010).

[T]he essential elements for the creation and application of the attorney-client privilege [are]:

> (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*People v. Simms*, 736 N.E.2d 1092, 1117 (Ill. 2000) (internal citations omitted).  The party seeking to invoke the attorney-client privilege bears the burden of establishing all essential elements of the privilege.  *Cox v. Yellow Cab Co.*, 337 N.E.2d 15, 17-18 (Ill. 1975).  Here, BRP and Attorney Defendants have not and cannot meet this burden.

### C. BRP Waived Attorney-Client Privilege as to Communications Subject-Matter

BRP has waived attorney-client privilege by forwarding privileged communications to a third party—BMO.  When privileged communications between an attorney and client are shared with third parties, the privilege is waived.  *See People v. Murry*, 711 N.E.2d 1230 (Ill. 1999).  That waiver, however, extends not only to the disclosed document but instead "waives the privilege as to all information on the same subject matter."  *Fujisawa Pharm. Co., Ltd. v. Kapoor*, 162 F.R.D. 539, 541 (N.D. Ill. 1995); *see also In re Grand Jury Jan. 246*, 651 N.E.2d 696, 700 (Ill. App. Ct. 1995) ("where a client reveals portions of her conversation with her attorney, those revelations amount to a waiver of the attorney-client privilege as to . . . communication about the same subject matter").

In the present case, BRP has claimed as privileged, and put on its privilege log, an e-mail chain from April 7, 2008 between Stephanie Vaillancourt, BRP's Director of Treasury, and Yves St. Arnaud and Martin Langelier, both in-house attorneys for BRP.  *See* BRP's First Privilege Log, Bates Nos. 420, 4, and 6-8, attached hereto as Exhibit 1a.  As shown by the redacted version of Bates Nos. 4 and 6-8, the privilege was waived because the email chain was forwarded to third parties, namely employees of BMO.[2]  In fact, this waiver was confirmed when BMO produced the same e-mail chain in numerous instances without attempting to claim privilege.  *See*, *e.g.*, BMO 50-57, attached herein as Exhibit 4.  Nonetheless, BRP inexplicably continues to claim privilege over related emails in its supplemental privilege log even though the privilege has clearly been waived.  *See* Exhibit 1, Bates No. 420.

In this correspondence, which took place on April 7, 2008, Yves St-Arnaud, BRP's in-house counsel, advised Stephanie Vaillancourt that pursuant to the Settlement Agreement, BRP

---

[2] BRP originally claimed privilege via the common-interest doctrine over some of these documents, but relented and produced the e-mail chain and an updated privilege log after Kawasaki argued that the common-interest doctrine was inapplicable because BRP and BMO were adverse and did not share an identical legal interest.  *See* BOMBARDIER Bates No. 5-7, attached hereto as Exhibit 3.

is required to obtain satisfaction from BMO by April 10, 2008 that "all the BRP Patents . . . be made  subordinate" to Kawasaki. *Id.*   Ms. Vaillancourt forwarded another privileged communication regarding the subordination, an email sent by Martin Langelier on April 24, 2008 enclosing a draft acknowledgement (which BMO ultimately refused to sign).  *See* BMO 1-2; 59, 72, 141, and 180-184, attached herein as Exhibit 5.  Accordingly, BRP must disclose all documents that it claims to be privileged that relate to such acknowledgement or subordination by BMO.

While the forwarded e-mails have been produced by either BRP or BMO, waiver goes beyond these specific communications.  *See Fujisawa Pharm.* 162 F.R.D. at 541; *In re Grand Jury Jan. 246*, 651 N.E.2d at 700.  It reaches to the full extent of the subject matter discussed therein.  *See id.*  These e-mail chains, which were originally privileged (and claimed to be privileged by BRP), contain communications regarding the subordination that BRP was required to obtain from BMO under the Settlement Agreement.  These communications likely relate to the conditions placed on BRP by BMO to obtain the subordination promised to Kawasaki.  Based on the descriptions in BRP's and Attorney Defendant's privilege logs, at least the following documents from that time period must be produced because the claim of privilege has been waived: BOMBARDIER 4; 82-88; 111-119; 211-216; 222-223; 420; 423-425; 439-449; 497-499; 501; 515-516; 522-531; 616-617; and MG 10-12 and 28-39.  *See* Exhibits 1 and 2 (requested entries are highlighted in yellow).

### D.  The Attorney-Client Privilege Is Breached in this Case Under the Crime-Fraud Exception

A number of the documents logged by BRP and Attorney Defendants must be produced under the crime-fraud exception.  The crime-fraud exception "applies when a client seeks or obtains the services of an attorney in furtherance of criminal or fraudulent activity." *In re*

*Marriage of Decker*, 606 N.E.2d 1094, 1101 (Ill. 1992) (internal citations omitted).  "The rationale for this exception is that in seeking legal counsel to further a crime or fraud, the client does not seek advice from an attorney in his professional capacity." *Id.*  "[W]here the crime-fraud exception applies, no attorney-client privilege exists whatsoever, and the communication is not privileged." *Id.*

To show that the crime-fraud exception applies, a party must demonstrate that, when consulting the attorney, the client "knew or should have known that the intended conduct was illegal." *Id.* at 1102.  The party seeking discovery is not required to "establish a full-blown case of crime or fraud"; instead, it "must make out a prima facie case, that is, 'a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof.'" *Mueller Indus., Inc. v. Berkman*, 927 N.E.2d 794, 808 (Ill. App. Ct. 2010) (quoting *Decker*, 606 N.E.2d at 1105).  Once this burden is met, "the trial court may conduct an in camera inspection of the relevant documents to determine whether the communications were indeed in furtherance of a crime or fraud. If so, production of the documents may be compelled." *Id.* (citing *Decker*, 606 N.E.2d at 1106-07).

In the present case, Kawasaki has laid out a *prima facie* case of fraud in its Complaint and as described above in the background.  *See* ECF No. 2.  It appears likely that the Attorney Defendants were a part of BRP's fraud against Kawasaki.  *See* Complaint, ECF No. 2.  Either the Attorney Defendants were a knowing part of the fraud or were merely used as an instrumentality of the fraud against Kawasaki.  The documents sought by Kawasaki are directly related to whether the Attorney Defendants were aware of the misrepresentations made by BRP at the time they communicated the statements to Kawasaki.

BRP, through the Attorney Defendants, represented to Kawasaki that an agreement existed between BRP and BMO under which BMO would subordinate its security interest in BRP's patent portfolio to the rights granted to Kawasaki under the settlement agreement after the settlement agreement was executed.  ECF No. 2, ¶ 43.  It appears from BRP's correspondence with BMO that BMO did not explicitly agree to subordinate its security interest, but instead laid out requirements for BRP concerning the subordination.  BRP must have realized then it could not comply with those requirements and thus the representations made to Kawasaki were false and were designed to fraudulently induce Kawasaki to enter into the settlement agreement.  *Id.*

Richard Belzil of BMO told Stephanie Vaillancourt on January 21, 2008 (before BRP and Kawasaki finalized the written settlement agreement) that BMO would require BRP to certify that the value of the collateral impacted by the subordination was less than $5 million Canadian dollars.  This email also stated that BRP's patent portfolio—the very property impacted by the settlement and thus needing to be subordinated—possessed a book value at $32 million Canadian dollars.[3]  *See* BMO 136, attached hereto as Exhibit 6.  There was no further apparent communication between BMO and BRP before the parties executed the settlement agreement.  BRP never mentioned the requirements placed on the subordination by BMO.  Thus, BRP knew at the time of the representation to Kawasaki that BRP could never satisfy the requirements placed on the subordination by BMO.  BRP could not have credibly believed that a portfolio valued at $32 million would, a few years later, only be valued at less than $5 million.

Yet, that appears to be what BRP is inexplicably claiming.  In its responses to Kawasaki's Requests for Admission, it denied a request to admit that it never had an agreement with BMO to subordinate, stating: "[I]t was Bombardier's understanding Bank of Montreal

---

[3] The settlement agreement implicates BRP's US patent portfolio, permitting Kawasaki to use any of those patents on Kawasaki's watercraft.  Based on the statements made by BMO, BRP's portfolio had been valued well in excess of the $5 million threshold when BMO evaluated the portfolio for the security agreement itself.

agreed it would subordinate and therefore denied." *See*, *e.g.*, ECF No. 76, Response to Request No. 1. In denying another request for admission, BRP stated: "Bombardier had received notification before April 1, 2008 that the Bank of Montreal was willing to subordinate its interest." *See id.* at Response to Request No. 29. In BRP's and BMO's document productions, there are no communications between them after January 21, 2008 until April 8, 2008. Therefore, this e-mail from January 21, 2008 must be the agreement to which BRP is referring.

Moreover, it appears that BRP probably notified Attorney Defendants' of this "agreement to subordinate" on January 29, 2008. In Kawasaki's requests for admission to Attorney Defendants, it requested that they admit that BRP never had an agreement with BMO concerning the subordination. *See*, *e.g.*, ECF Nos. 74, 75, Request No. 1. Both of Attorney Defendants responded: "Defendant objects to the extent a response to this request requires violation of BRP's attorney-client privilege. Defendant's admission or denial of this matter would be based on item #1 of privilege log." *See*, *e.g.*, *id.* at Response to Request No. 1. Item number 11 on their privilege log is a communication with BRP on January 29, 2008.[4] *See* Exhibit 2. Thereafter, on that same day, Attorney Defendants represented to Kawasaki's counsel that BMO had agreed to subordinate its interest to Kawasaki. *See* ECF No. 48-2

Accordingly, BRP (possibly the Attorney Defendants) made false and fraudulent statements to Kawasaki in order to induce Kawasaki to enter into the settlement agreement and dismiss the underlying litigation when it knew that it wouldn't be able to get BMO to subordinate its interest. This is a *prima facie* case of fraud.

Further, the fraud continued when the Attorney Defendants failed to notify Kawasaki of the true issues concerning BMO's refusal to subordinate its security interest until well after the

---

[4] Thus, the January 29, 2008 communications logged on Attorney Defendants' privilege log are potentially dispositive of whether Attorney Defendants actively engaged in the fraud with BRP or whether they were used as a pawn in BRP's fraudulent deception.

underlying litigation had already been dismissed.  In the interests of justice, the Court should apply the crime-fraud exception to allow Kawasaki's attorneys to view the communications involving BRP's in-house and outside counsel to fully investigate this fraud and to properly pursue its present causes of action.

On April 8, 2008, after the underlying litigation had already been settled, Stephanie Vaillancourt sent an email to BMO requesting the subordination.  *See* BMO 131, attached hereto as Exhibit 7.  After BMO requested confirmation that the patents to be subordinated were worth less than $5 million, she stated: "Currently, the value of our patents has not been assessed. It is a very long and expensive process. To the best of our knowledge, we respect the criteria mentioned below."  *See* BMO 55, 120, 127, attached hereto as Exhibit 8.  BMO then stated that this representation was insufficient, and BRP replied that it could not provide a stronger representation to meet BMO's requirements.  *Id.*  Thus, BMO refused to subordinate its interest to Kawasaki as demanded by the settlement agreement.  *See id.*  Even after this exchange, BRP and Attorney Defendants' continued to represent that it was going to get the subordination from BMO, causing Kawasaki to continue to fulfill its promises under the settlement agreement.  For example, Kawasaki's counsel suggested that Kawasaki should hold its performance of remaining obligations until after BRP produced evidence of the subordination.  BRP and Attorney Defendants responded on April 9, 2008 that they didn't think the situation was "analogous":

> The unexpected delay we are encountering with the subordination agreement results from having to work with the bank's attorneys. We discussed the need for the subordination agreement with the bank before finalizing the settlement agreement and we don't expect any problems with obtaining the subordination agreement.

MG 281-282, attached as Exhibit 9.  This was not true.  The reason for the delay was because BRP could not make the representations required by BMO.  BMO's demand was reiterated in an

e-mail from BMO on April 8, 2011 (and BRP admitted that it couldn't make the necessary representations on April 9th).  *See* Exhibit 8.  Neither BRP nor the Attorney Defendants told Kawasaki this; instead, they made false statements and let Kawasaki believe that the paperwork was merely taking longer than expected so that Kawasaki would dismiss the reexamination and underlying litigation.

Thus, BRP and Attorney Defendants should be required to produce at least the following documents logged as privileged for *in camera* inspection under the crime fraud exception: BOMBARDIER 327 and 614, and MG 10-12 and 28-31.

## II.   WORK-PRODUCT DOCTRINE

### A.   Kawasaki has a Substantial Need for the Documents and Cannot Discover Them Elsewhere

The work-product doctrine also does not protect the documents identified above from discovery.[5]  "Codified at Rule 26(b)(3) of the Federal Rules of Civil Procedure, the work-product doctrine is designed to serve dual purposes: (1) to protect an attorney's thought processes and mental impressions against disclosure; and (2) to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts."  *Sandra T.E. v. South Berwyn School Dist. 100*, 600 F.3d 612, 621-22 (7th Cir. 2010) (*citing Hickman v. Taylor*, 329 U.S. 495 (1947)).

In the present case, these purposes are not served by protecting the documents-at-issue from disclosure.  Kawasaki is not attempting to invade the thought processes and mental impressions of BRP's attorneys to gain a tactical advantage in litigation and piggyback on BRP's efforts.  Instead, this is a subsequent suit to enforce the settlement agreement reached in a previous litigation.  It is essential for Kawasaki to determine the facts underlying BRP's

---

[5] The work-product doctrine has not been claimed and is thus inapplicable for the following documents: MG 11-12, 28-29, 31-32, 36-37, and 39.  *See* Exhibit 2.

negotiations with BMO and its attempt to get the bank to subordinate its collateral or consent to a cross-license.  These facts are necessary for Kawasaki to fully pursue its claims of fraud and breach of the settlement agreement.

Further, as explained above, BRP has waived the work-product doctrine by forwarding such documents to BMO.  Moreover, under Fed. R. Civ. P. 26(b)(3)(A)(ii), such documents are discoverable if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  That test is met here. As stated above, these documents are essential to Kawasaki's case, and it is impossible for Kawasaki to obtain them from any person or source other than Defendants.

Finally, as described above in connection with the crime-fraud exception to the attorney-client privilege, the work-product doctrine is also waived for client fraud.  *In re Special September 1978 Grand Jury (II)*, 640 F.2d 49 (7th Cir. 1980).  Therefore, the following documents must be produced: BOMBARDIER 4; 82-88; 111-119; 211-216; 222-223; 327; 420; 423-425; 439-449; 497- 499; 501; 515-516; 522-531; 614; 616-617; and MG 10 and 28-39.

### III.   REQUESTS FOR ADMISSION

Both Attorney Defendants refused to provide a response to Kawasaki's requests for admissions 1 through 6.  *See* ECF Nos. 66-67 and 74-75.  Instead, they objected "to the extent a response to this request requires violation of BRP's attorney-client privilege.  [Attorney Defendants'] admission or denial of this matter would be based on item #11 of privilege log." *See*, ECF Nos. 74 and 75, Responses to Request Nos. 1-6.  However, as explained above, any privilege over Attorney Defendants' item #11 or Bates No. MG 11 has been waived.  Further, the privilege must be pierced under the crime-fraud exception.  Likewise, analogous Requests for Admissions directed to BRP suffer from the same defects.  *See*, ECF Nos. 76 and 77, Responses

to Request Nos. 7-8.  Accordingly, BRP and the Attorney Defendants should be compelled to respond to these requests without claiming the attorney-client privilege.

## CONCLUSION

WHEREFORE, Kawasaki respectfully requests that the Court compel production of the above identified documents listed in BRP's April 6, 2011 supplemental privilege log and Attorney Defendants' February 22, 2011 privilege log, further compel Attorney Defendants and BRP to respond to the above identified requests for admission, and any other and further relief as the Court may deem just and proper.

Dated:  May 10, 2011                          Respectfully submitted,

                                              Thompson Coburn LLP


                                              By: /s/ Jonathan G. Musch
                                                  Richard A. Mueller
                                                  Steven E. Garlock
                                                  David B. Jinkins
                                                  Jonathan G. Musch
                                                  One US Bank Plaza
                                                  St. Louis, Missouri 63101
                                                  phone: (314) 552 -6000
                                                  fax: (314) 552 -7000

                                                  and

                                                  Thomas Q. Keefe Jr.
                                                  Thomas Q Keefe Jr PC
                                                  6 Executive Woods Ct
                                                  Swansea IL 62226-2016
                                                  Phone: (618) 236-2221
                                                  Fax: (618) 236-2194

                                                  *Attorneys for Plaintiffs, Kawasaki Heavy Industries, Ltd. and Kawasaki Motors Manufacturing Corp., USA*

**<u>Certificate of Service</u>**

I hereby certify that on May 10, 2011, I electronically filed the attached with the Clerk of Court using the CM/ECF system which will send notification of such filings(s) to all counsel of record.

Respectfully submitted,

/s/ Jonathan G. Musch _____