IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KAWASAKI HEAVY INDUSTRIES, LTD. (a/k/a KAWASAKI JUKOGYO KABUSHIKI KAISHA) and KAWASAKI MOTORS MANUFACTURING CORP., U.S.A., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.  3:10-cv-641-DRH |
| vs. | ) ) | Jury Trial Demanded |
| BOMBARDIER RECREATIONAL PRODUCTS, INC., BRP U.S., INC., BANK OF MONTREAL (in its capacity as administrative agent), HARRY MARCUS, and ROBERT GOETHALS, | ) ) ) ) ) | |
| Defendants. | ) | |

## ANSWERS AND AFFIRMATIVE DEFENSES

NOW COMES Defendant, Bank of Montreal, as Administrative Agent (*"BMO")*, by and through its undersigned counsel Chapman and Cutler LLP, and for its answers and affirmative defenses to the complaint of plaintiffs Kawasaki Heavy Industries, Ltd. (a/k/a Kawasaki Jukogyo Kabushiki Kaisha) and Kawasaki Motors Manufacturing Corp., U.S.A. (collectively, the *"Kawasaki Parties"* or *"Plaintiffs"*), respectfully answers as follows:

## ANSWER

1.       KHI and its manufacturing subsidiary, KMM, (collectively referred to herein as the *"Kawasaki Parties")* are in the business of (among other things) designing and manufacturing personal watercraft.  The Kawasaki Parties previously litigated several patent infringement lawsuits against BRP-CA and BRP-US (collectively, the *"BRP Parties")* concerning patents related to personal watercraft.  During that litigation, the BRP Parties were represented by Harry Marcus and Robert Goethals, then of the law firm of Morgan Finnegan LLP.  Those patent infringement matters were jointly dismissed by the parties in accordance with a confidential settlement agreement.  Certain rights given to the Kawasaki Parties under that settlement agreement are imperiled by the BRP Parties' grant of a security interest to a group of lenders (for which the BOM is the administrative agent), a security interest that the BRP Parties were required to make subordinate.  The BRP Parties have refused to fully perform their obligations under the settlement agreement.  Further, during the negotiation of the settlement agreement and termination of the underlying litigation, the BRP Parties and their

counsel misrepresented that BOM had agreed to (or had in fact) subordinated its interest in BRP's patents thereby fraudulently inducing the Kawasaki Parties into entering into the settlement agreement and dismissing the underlying litigation.

**ANSWER**:     BMO admits only that the Kawasaki Parties and the BRP Parties previously litigated patent disputes to which BMO was not a party.  BMO denies that any of the Kawasaki Parties rights are "imperiled" by BMO's security interest in the BRP Parties' patents or that the Kawasaki Parties were "fraudulently induced" into settling the underlying litigation. BMO lacks information sufficient to admit or deny the remaining allegations in this paragraph 1 and therefore denies the same.

### JURISDICTION AND VENUE

2.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) (diversity).

**ANSWER**:     Denied.  Responding further, BMO incorporates its First Affirmative Defense below.

3.     On information and belief, the value of the property rights at issue in this action exceed $75,000, exclusive of interest and cost.

**ANSWER**:     Denied.  Responding further, BMO incorporates its First Affirmative Defense below.

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 because BRP-US is subject to personal jurisdiction in this district.

**ANSWER**:     Denied.  Responding further, BMO incorporates its Third Affirmative Defense below.

### PARTIES

5.     KHI is a Japanese corporation having a principal place of business at Kobe Crystal Tower, 1-3, Higashikawasaki-cho, 1-Chome, Chuo-ku, Kobe, Hyogo 650-8680, Japan.

**ANSWER**:     BMO lacks information sufficient to admit or deny the allegations in this paragraph 5 and therefore denies the same.

6.    KMM is a wholly owned subsidiary of KHI.   KMM manufactures personal watercrafts in the United States via a non-exclusive license granted by KHI.   KMM is a Nebraska corporation with its principal place of business at 6600 Northwest 27th Street, Lincoln, NE 68524.

**ANSWER**:    BMO lacks information sufficient to admit or deny the allegations in this paragraph 6 and therefore denies the same.

7.    On information and belief, BRP-CA is a Canadian corporation with its principal place of business at 726 rue St-Joseph Street, Valcourt, Quebec, Canada, J0E 2L0. On information and belief, BRP-CA does business in this district.

**ANSWER**:    BMO lacks information sufficient to admit or deny the allegations in this paragraph 7 and therefore denies the same.

8.    On information and belief, BRP-US is a Delaware corporation with its principal place of business at 10101 Science Drive, Sturtevant, Wisconsin 53177.   Also on information and belief, BRP-US also owns a manufacturing facility within this district, in Benton, Illinois.

**ANSWER**:    BMO lacks information sufficient to admit or deny the allegations in this paragraph 8 and therefore denies the same.   Responding further, BMO states that a search of the Delaware Secretary of State's records indicates that BRP-US is a Delaware corporation.

9.    On information and belief, BOM is a Canadian Corporation with its principal place of business at 129 rue Saint-Jacques, Montreal, Canada, QCH2Y1L.

**ANSWER**:    Denied.

10.    On information and belief, Harry Marcus is an individual resident of the State of New York, having a business address of Three World Financial Center, New York, NY 10281-2101.  On information and belief, Harry Marcus has done business in this district.

**ANSWER**:    BMO lacks information sufficient to admit or deny the allegations in this paragraph 10 and therefore denies the same.

11.    On information and belief, Robert Goethals is an individual resident of the State of New York, having a business address of Three World Financial Center, New York, NY 10281-2101.  On information and belief, Robert Goethals has done business in this district.

**ANSWER**:    BMO lacks information sufficient to admit or deny the allegations in this paragraph 11 and therefore denies the same.

<u>FACTS COMMON TO ALL COUNTS</u>

12.     On or about February 17, 2006, the BRP Parties filed a patent infringement action in the Middle District of Florida against the Kawasaki Parties and others.  That case was styled: *Bombardier Recreational Products, Inc. and BRP-US, Inc. v. Kawasaki Heavy Industries, Ltd. et al.*, Case No. 06-cv-195-JA-JGG.  This suit is referred to herein as the Florida Action.

**ANSWER**:     BMO lacks information sufficient to admit or deny the allegations in this paragraph 12 and therefore denies the same.

13.     On or about September 18, 2006, Kawasaki requested that United States Patent and Trademark Office reexamine the patents at issue in the Middle District of Florida lawsuit. These reexamination concerned U.S. Patent Nos. 6,336,833 (Control No. 90/008222), 6,405,669 (Control No. 95/000179), and 6,428,371 (Control No. 95/000163).

**ANSWER**:     BMO lacks information sufficient to admit or deny the allegations in this paragraph 13 and therefore denies the same.

14.     On or about October 3, 2006, KHI filed a patent infringement action in the Eastern District of Texas, asserting Kawasaki patents against the BRP Parties.  That case was styled: *Kawasaki Heavy Industries, Ltd. v. Bombardier Recreational Products, Inc. and BRP-US, Inc.*, Case No. 06-cv-222-DF.  This suit is referred to herein as the Texarkana Action.

**ANSWER**:     BMO lacks information sufficient to admit or deny the allegations in this paragraph 14 and therefore denies the same.

15.     On or about April 11, 2007, the BRP Parties again filed a patent infringement action, this time in the Eastern District of Texas, asserting additional BRP patents against the Kawasaki Parties and others.  That case was styled: *Bombardier Recreational Products, Inc. and BRP-US, Inc. v. Kawasaki Heavy Industries, Ltd. et al.*, Case No. 07-cv-156-LED.  This suit is referred to herein as the Tyler Action.

**ANSWER**:     BMO lacks information sufficient to admit or deny the allegations in this paragraph 15 and therefore denies the same.

16.     On or about September 6, 2007, the Kawasaki Parties and the BRP Parties reached an agreement in principal that resolved the Florida, Texarkana, and Tyler Actions.  This agreement provided certain rights to the BRP Parties and the Kawasaki Parties.

**ANSWER**:     BMO lacks information sufficient to admit or deny the allegations in this paragraph 16 and therefore denies the same.

17.     During negotiations towards a final settlement agreement, the Kawasaki Parties learned that a creditor group had a security interest in BRP Parties' patents, including those asserted in litigation.  This security interest includes, but is not limited to those agreements recorded in the United States Patent and Trademark Office at Reel 018350, Frames 0269 to 0306 and at Reel 014546, Frame 0629 to 0681.  That creditor group is lead by BOM, which at all relevant times has been acting as administrative agent.

**ANSWER**:     BMO lacks information sufficient to admit or deny the allegations in this paragraph 17 and therefore denies the same.  Responding further, BMO admits that it acts as administrative agent for certain lenders that have a security interest in certain of the BRP Parties' patents.

18.     In light of this discovery, the Kawasaki Parties required that the BRP Parties be obligated to obtain a subordination agreement from BOM, which would make the Kawasaki Parties' rights superior to the security interest granted to BOM.  Because this requirement involved a security interest administered by the BOM, the Kawasaki Parties also asked the BRP Parties to confirm that the BOM was willing to subordinate the security interest in the BRP Parties' patents to the Kawasaki Parties prior to entering into the settlement agreement.

**ANSWER**:     BMO lacks information sufficient to admit or deny the allegations in this paragraph 18 and therefore denies the same.  To the extent that paragraph 18 may be read to allege that BMO had any obligations arising from the Settlement Agreement, BMO denies the same.

19.     In response to this request for confirmation, on January 29, 2008, counsel for the BRP Parties Robert Goethals and Harry Marcus, stated "BRP has just received word that the Bank of Montreal will agree to subordinate the security interests."

**ANSWER**:     BMO lacks information sufficient to admit or deny the allegations in this paragraph 19 and therefore denies the same.  To the extent that paragraph 19 may be read to allege that BMO had any obligations arising from the Settlement Agreement, BMO denies the same.

20.     In reliance on this representation, the Kawasaki Parties and the BRP Parties finalized the settlement agreement (referred to herein as the *"Settlement Agreement"*).  The parties to the Settlement Agreement were required to take several actions within a short period of time.

**ANSWER**:     BMO lacks information sufficient to admit or deny the allegations in this paragraph 20 and therefore denies the same.  To the extent that paragraph 20 may be read to allege that BMO had any obligations arising from the Settlement Agreement, BMO denies the same.

21.     The Kawasaki Parties required the BRP Parties to make a security interest granted to a creditor group lead by the BOM subordinate to the rights given to Kawasaki under the Settlement Agreement.  Given the compact structure of the parties' obligations, the Kawasaki Parties requested and the BRP Parties' provided written assurance that the BRP Parties already had an agreement with the BOM to subordinate before execution of the Settlement Agreement.

**ANSWER**:     BMO lacks information sufficient to admit or deny the allegations in this paragraph 21 and therefore denies the same.  To the extent that paragraph 21 may be read to allege that BMO had any obligations arising from the Settlement Agreement, BMO denies the same.

22.     The parties timely dismissed the cases.

**ANSWER**:     BMO admits that the Court's records reflect that the cases were dismissed. BMO lacks information sufficient to admit or deny the remaining allegations in this paragraph 22 and therefore denies the same.

23.     On April 8, 2008 (approximately 8 days after the Effective Date), the BRP Parties' counsel continued to portray the subordination as a *fait accompli*, informing the Kawasaki Parties "that it is taking longer than expected to work with the Bank to prepare and execute the subordination documents.  He thinks it will take an additional 15 days beyond the 10 day period provided in the Settlement Agreement."

**ANSWER**:     BMO lacks information sufficient to admit or deny the allegations in this paragraph 23 and therefore denies the same.  To the extent that paragraph 23 may be read to allege that BMO had any obligations arising from the Settlement Agreement, BMO denies the same.

24.     On April 9, 2008, the Kawasaki Parties expressed concern about the BRP Parties willingness to comply with their obligations under the Settlement Agreement in light of the issues concerning the subordination raised by the correspondence of April 8, 2008.  In response,

the BRP Parties' counsel continued to portray the subordination agreement execution was a mere formality:

> "[t]he unexpected delay we are encountering with the subordination agreement results from having to work with the bank's attorneys. We discussed the need for the subordination agreement with the bank before finalizing the settlement agreement and we don't expect any problems with obtaining the subordination agreement. However, we cannot dictate the timeframe for finalizing it since we are dealing with another party."

Shortly after this statement, the Kawasaki Parties had fully performed their obligations under the Settlement Agreement.

**ANSWER**:      BMO lacks information sufficient to admit or deny the allegations in this paragraph 24 and therefore denies the same.  To the extent that paragraph 24 may be read to allege that BMO had any obligations arising from the Settlement Agreement, BMO denies the same.  To the extent that paragraph 24 may be read as asserting a legal conclusion, no response is required.

25.      On or about May 14, 2008, the BRP Parties informed the Kawasaki Parties that they were not going to provide the required subordination agreement.  To date, the BRP Parties have not provided the subordination agreement, nor have the BRP Parties given the Kawasaki Parties any indication that they intend on supplying a subordination agreement.

**ANSWER**:      BMO lacks information sufficient to admit or deny the allegations in this paragraph 25 and therefore denies the same.  To the extent that paragraph 25 may be read to allege that BMO had any obligations arising from the Settlement Agreement, BMO denies the same.

26.      The BRP Parties' breach of the Settlement Agreement (namely, failing to obtain the required subordination), damages the Kawasaki Parties because they are unable to enjoy the benefit of the bargain they obtained in the Settlement Agreement.

**ANSWER**:      BMO lacks information sufficient to admit or deny the allegations in this paragraph 26 and therefore denies the same.  To the extent that paragraph 26 may be read to

allege that BMO had any obligations arising from the Settlement Agreement, BMO denies the same.

## COUNT I
### REQUEST FOR SPECIFIC PERFORMANCE

27.    The Kawasaki Parties incorporate by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

**ANSWER**:    BMO incorporates by reference, as if fully set forth herein, its answers to the preceding paragraphs of this Complaint.

28.    The Settlement Agreement is a valid and binding contract, enforceable against the BRP Parties in accordance with its terms.

**ANSWER**:    BMO lacks information sufficient to admit or deny the allegations in this paragraph 28 and therefore denies the same.  To the extent that paragraph 28 may be read to allege that BMO had any obligations arising from the Settlement Agreement, BMO denies the same.  To the extent that paragraph 28 may be read as asserting a legal conclusion, no response is required.

29.    The BRP Parties knowingly acted in violation of the Settlement Agreement by refusing to provide proof of subordination.

**ANSWER**:    BMO lacks information sufficient to admit or deny the allegations in this paragraph 29 and therefore denies the same.  To the extent that paragraph 29 may be read to allege that BMO had any obligations arising from the Settlement Agreement, BMO denies the same.

30.    The contractual provisions at issue are definite, complete in their essential terms, and capable of being enforced without adding to their terms.

**ANSWER**:    Denied.

31.    The Kawasaki Parties have no adequate remedy at law, in that only a subordination of the security interest held by the BOM (as administrative agent) on the subject patents can place the Kawasaki Parties in the same position as if the BRP Parties had fully performed their obligations under the Settlement Agreement.

**ANSWER**:     BMO denies that the Kawasaki Parties have an inadequate remedy at law or that they have been damaged by the absence of a subordination agreement.  BMO lacks information sufficient to admit or deny the remaining allegations in this paragraph 31 and therefore denies the same.  To the extent that paragraph 31 may be read to allege that BMO had any obligations arising from the Settlement Agreement, BMO denies the same.  To the extent that paragraph 31 may be read as asserting a legal conclusion, no response is required.

32.    The balance of equities favors an order of specific performance on the BRP Parties' contractual obligations, and no public policy will be offended by an order of specific performance.

**ANSWER**:     Denied.

## COUNT II
### THE BRP PARTIES' BREACH OF THE SETTLEMENT AGREEMENT (ALTERNATIVE RELIEF)

33.    The Kawasaki Parties incorporate by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

**ANSWER**:     BMO incorporates by reference, as if fully set forth herein, its answers to the preceding paragraphs of the Complaint.

34.    The Settlement Agreement is a valid contract.

**ANSWER**:     BMO lacks information sufficient to admit or deny the allegations in this paragraph 34 and therefore denies the same.

35.    The Kawasaki Parties have fully performed all of their obligations under the Settlement Agreement.

**ANSWER**:     BMO lacks information sufficient to admit or deny the allegations in this paragraph 35 and therefore denies the same.  To the extent that paragraph 35 may be read to allege that BMO had any obligations arising from the Settlement Agreement, BMO denies the same.  To the extent that paragraph 35 may be read as asserting a legal conclusion, no response is required.

36.     The BRP Parties were required to make all relevant security agreements subordinate to the Settlement Agreement.

**ANSWER**:     BMO lacks information sufficient to admit or deny the allegations in this paragraph 36 and therefore denies the same.  To the extent that paragraph 36 may be read to allege that BMO had any obligations arising from the Settlement Agreement, BMO denies the same.  To the extent that paragraph 36 may be read as asserting a legal conclusion, no response is required.

37.     On information and belief, the BRP Parties did not cause all security agreements between the BRP Parties and the BOM to be made subordinate to the Settlement Agreement.

**ANSWER**:     BMO admits only that it did not agree to make its security interest subordinate to the Settlement Agreement.  BMO lacks information sufficient to admit or deny the remaining allegations in this paragraph 37 and therefore denies the same.  To the extent that paragraph 37 may be read to allege that BMO had any obligations arising from the Settlement Agreement, BMO denies the same.

38.     The BRP Parties have not provided the Kawasaki Parties with any evidence that the security agreements between the BRP Parties and the BOM to be made subordinate to the Settlement Agreement.

**ANSWER**:     BMO lacks information sufficient to admit or deny the allegations in this paragraph 38 and therefore denies the same.  To the extent that paragraph 38 may be read to allege that BMO had any obligations arising from the Settlement Agreement, BMO denies the same.

39.     The BRP Parties have also breached representations and warrants made by the BRP Parties in the Settlement Agreement.

**ANSWER**:     BMO lacks information sufficient to admit or deny the allegations in this paragraph 39 and therefore denies the same.  To the extent that paragraph 39 may be read to allege that BMO had any obligations arising from the Settlement Agreement, BMO denies the

same.  To the extent that paragraph 39 may be read as asserting a legal conclusion, no response is required.

40.     The BRP Parties breached the Settlement Agreement.

**ANSWER**:     BMO lacks information sufficient to admit or deny the allegations in this paragraph 40 and therefore denies the same.  To the extent that paragraph 40 may be read to allege that BMO had any obligations arising from the Settlement Agreement, BMO denies the same.  To the extent that paragraph 40 may be read as asserting a legal conclusion, no response is required.

41.     As a direct and proximate result of the BRP Parties' breach of the Settlement Agreement, the Kawasaki Parties have been damaged. On information and belief, the value of the property rights at issue in this action exceed $75,000, exclusive of interest and cost.

**ANSWER**:     Denied.

### COUNT III
### FRAUD (THE BRP PARTIES, HARRY MARCUS, AND ROBERT GOETHALS)

42.     The Kawasaki Parties incorporate by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

**ANSWER**:     BMO incorporates by reference, as if fully set forth herein, its answers to the preceding paragraphs of the Complaint.

43.     The BRP Parties, via their attorneys Harry Marcus and Robert Goethals, represented to the Kawasaki Parties that an agreement existed between the BRP Parties and BOM under which BOM would make its security interest subordinate to the Settlement Agreement.  The BRP Parties, via their attorneys Harry Marcus and Robert Goethals, continued to reinforce these representations after the execution of the Settlement Agreement.

**ANSWER**:     BMO lacks information sufficient to admit or deny the allegations in this paragraph 43 and therefore denies the same.  To the extent that paragraph 43 may be read to allege that BMO had any obligations arising from the Settlement Agreement, BMO denies the same.  To the extent that paragraph 43 may be read as asserting a legal conclusion, no response is required.

44.     This statement was false.  On information and belief, the BRP Parties did not have an agreement with BOM at any time concerning subordination.

**ANSWER**:     BMO lacks information sufficient to admit or deny the allegations in this paragraph 44 and therefore denies the same.  To the extent that paragraph 44 may be read to allege that BMO had any obligations arising from the Settlement Agreement, BMO denies the same.  To the extent that paragraph 44 may be read to allege that BMO agreed to subordinate its security interest, BMO denies the same.  To the extent that paragraph 44 may be read as asserting a legal conclusion, no response is required.

45.     If no such agreement existed, the BRP Parties' counsel made a false representation, had no basis for his assertion (recklessly making the statement without any knowledge as to its truth), or the truth was deliberately misrepresented by the BRP Parties to its counsel, who failed to substantiate the accuracy of that statement.

**ANSWER**:     BMO lacks information sufficient to admit or deny the allegations in this paragraph 45 and therefore denies the same.  To the extent that paragraph 45 may be read to allege that BMO agreed to subordinate its security interest, BMO denies the same.  To the extent that paragraph 45 may be read as asserting a legal conclusion, no response is required.

46.     On information and belief, these statements were made with knowledge of its falsity or the statement was made recklessly, without any knowledge as to its truth.

**ANSWER**:     BMO lacks information sufficient to admit or deny the allegations in this paragraph 46 and therefore denies the same.  To the extent that paragraph 46 may be read to allege that BMO had any obligations arising from the Settlement Agreement, BMO denies the same.  To the extent that paragraph 46 may be read as asserting a legal conclusion, no response is required.

47.     The BRP Parties' representation that it had an agreement to obtain the subordination was material.  The Kawasaki Parties were insistent that the subordination requirement be included in the Settlement Agreement.

**ANSWER**:     BMO lacks information sufficient to admit or deny the allegations in this paragraph 47 and therefore denies the same.  To the extent that paragraph 47 may be read to

allege that BMO had any obligations arising from the Settlement Agreement, BMO denies the same.  To the extent that paragraph 47 may be read as alleging that BMO had agreed to subordinate its security interest, BMO denies the same.  To the extent that paragraph 47 may be read as asserting a legal conclusion, no response is required.

48.   These statements, made by BRP's counsel Harry Marcus and Robert Goethals, were made to Kawasaki's attorneys with the intention that the Kawasaki Parties should rely on this information.

**ANSWER**:   BMO lacks information sufficient to admit or deny the allegations in this paragraph 48 and therefore denies the same.  To the extent that paragraph 48 may be read to allege that BMO had any obligations arising from the Settlement Agreement, BMO denies the same.  To the extent that paragraph 48 may be read as asserting a legal conclusion, no response is required.

49.   The Kawasaki Parties reasonably relied on the statements to their detriment.

**ANSWER**:   BMO lacks information sufficient to admit or deny the remaining allegations in this paragraph 49 and therefore denies the same.  To the extent that paragraph 49 may be read to allege that BMO had any obligations arising from the Settlement Agreement, BMO denies the same.  To the extent that paragraph 49 may be read as asserting a legal conclusion, no response is required.

50.   Because the Kawasaki Parties relied on the material misrepresentations of the BRP parties and its counsel, the Kawasaki Parties were damaged.  On information and belief, the value of the property rights at issue in this action exceed $75,000, exclusive of interest and cost.

**ANSWER**:   Denied.

### COUNT IV
### FRAUD IN THE INDUCEMENT (THE BRP PARTIES, HARRY MARCUS, AND ROBERT GOETHALS)

51.   The Kawasaki Parties incorporate by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

**ANSWER**:      BMO incorporates by reference, as if fully set forth herein, its answers to the preceding paragraphs of this Complaint.

52.   The BRP Parties, via their attorneys Harry Marcus and Robert Goethals, represented to the Kawasaki Parties that an agreement existed between the BRP Parties and BOM under which BOM would make its security interest subordinate to the Settlement Agreement.

**ANSWER**:      BMO lacks information sufficient to admit or deny the allegations in this paragraph 52 and therefore denies the same.   To the extent that paragraph 52 may be read to allege that BMO had any obligations arising from the Settlement Agreement, BMO denies the same.   To the extent that paragraph 52 may be read as asserting a legal conclusion, no response is required.

53.   This statement was false.   On information and belief, the BRP Parties did not have an agreement with BOM at any time concerning subordination.

**ANSWER**:      BMO admits only that it did not enter into an agreement to subordinate its security interest.   BMO lacks information sufficient to admit or deny the remaining allegations in this paragraph 53 and therefore denies the same.   To the extent that paragraph 53 may be read as asserting a legal conclusion, no response is required.

54.   If no such agreement existed, the BRP Parties' counsel made a false representation, had no basis for his assertion (recklessly making the statement without any knowledge as to its truth), or the truth was deliberately misrepresented by the BRP Parties to its counsel, who failed to substantiate the accuracy of that statement.

**ANSWER**:      BMO lacks information sufficient to admit or deny the allegations in this paragraph 54 and therefore denies the same.   To the extent that paragraph 54 may be read to allege that BMO agreed to subordinate its security interest, BMO denies the same.   To the extent that paragraph 54 may be read as asserting a legal conclusion, no response is required.

55.   On information and belief, these statements were made with knowledge of its falsity or the statement was made recklessly, without any knowledge as to its truth, as a positive assertion.

**ANSWER**:      BMO lacks information sufficient to admit or deny the remaining allegations in this paragraph 55 and therefore denies the same.

56.    These statements, made by BRP's counsel Harry Marcus and Robert Goethals were made to Kawasaki's attorneys with the intention that the Kawasaki Parties should rely on this information to enter into the Settlement Agreement.

**ANSWER**:      BMO lacks information sufficient to admit or deny the allegations in this paragraph 56 and therefore denies the same.

57.    The BRP Parties' representation that it had an agreement to obtain the subordination was material.   The Kawasaki Parties were insistent that the subordination requirement be included in the Settlement Agreement.

**ANSWER**:      BMO lacks information sufficient to admit or deny the remaining allegations in this paragraph 57 and therefore denies the same.   To the extent that paragraph 57 may be read to allege that BMO agreed to subordinate its security interest, BMO denies the same.   To the extent that paragraph 57 may be read as asserting a legal conclusion, no response is required.

58.    The Kawasaki Parties relied on the statements to its detriment.

**ANSWER**:      BMO lacks information sufficient to admit or deny the allegations in this paragraph 58 and therefore denies the same.   To the extent that paragraph 58 may be read as asserting a legal conclusion, no response is required.

59.    Because the Kawasaki Parties relied on the material misrepresentations of the BRP Parties and their counsel, the Kawasaki Parties were damaged.   On information and belief, the value of the property rights at issue in this action exceed $75,000, exclusive of interest and cost.

**ANSWER**:      BMO lacks information sufficient to admit or deny the allegations in paragraph 59 and therefore denies the same.

## COUNT V
### NEGLIGENT MISREPRESENTATION (THE BRP PARTIES, HARRY MARCUS, AND ROBERT GOETHALS)

60.     The Kawasaki Parties incorporate by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

**ANSWER**:      BMO incorporates by reference as if fully set forth herein its answers to the preceding paragraphs of this Complaint.

61.     The BRP Parties, via their attorneys Harry Marcus and Robert Goethals, represented to the Kawasaki Parties that an agreement existed between the BRP Parties and BOM to subordinate the BOM's security interest to the Settlement Agreement.

**ANSWER**:      BMO lacks information sufficient to admit or deny the allegations in this paragraph 61 and therefore denies the same.  To the extent that paragraph 61 may be read to allege that an agreement exists wherein BMO subordinated its security interest, BMO denies the same.  To the extent that paragraph 61 may be read as asserting a legal conclusion, no response is required.

62.     This representation was false.  On information and belief, the BRP Parties did not have an agreement with BOM at any time concerning subordination.

**ANSWER**:      BMO admits only that it did not enter into an agreement with the BRP Parties to subordinate its security interest.  BMO lacks information sufficient to admit or deny the remaining allegations in paragraph 62 and therefore denies the same.

63.     The BRP Parties had a pecuniary interest in the negotiating and getting the Kawasaki Parties to enter into the Settlement Agreement.

**ANSWER**:      BMO lacks information sufficient to admit or deny the allegations in paragraph 63 and therefore denies the same.

64.     The representation made by the BRP Parties, via their counsel Harry Marcus and Robert Goethals, was false information provided to the Kawasaki Parties.

**ANSWER**:      BMO lacks information sufficient to admit or deny the allegations in paragraph 64 and therefore denies the same.  To the extent that paragraph 64 may be read to

allege that an agreement exists wherein BMO subordinated its security interest, BMO denies the same.  To the extent that paragraph 64 may be read as asserting a legal conclusion, no response is required.

65.    The BRP Parties and their attorneys Harry Marcus and Robert Goethals did not exercise reasonable care in communicating this information to the Kawasaki Parties.

**ANSWER**:    BMO lacks information sufficient to admit or deny the allegations in paragraph 65 and therefore denies the same.

66.    The Kawasaki Parties justifiably relied on the misrepresentation to their detriment.

**ANSWER**:    Denied.

67.    In relying on this misrepresentation, the Kawasaki Parties were damaged.  On information and belief, the value of the property rights at issue in this action exceed $75,000, exclusive of interest and cost.

**ANSWER**:    BMO lacks information sufficient to admit or deny the allegations in this paragraph 67, and therefore denies the same.

## COUNT VI
### NEGLIGENCE (THE BRP PARTIES, HARRY MARCUS, AND ROBERT GOETHALS)

68.    The Kawasaki Parties incorporate by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

**ANSWER**:    BMO incorporates by reference its answers to the preceding paragraphs of this Complaint as if fully set forth herein.

69.    The BRP Parties and their counsel owed the Kawasaki Parties a duty of care to accurately represent the nature of their agreements with BOM during settlement negotiations.

**ANSWER**:    BMO lacks information sufficient to admit or deny the allegations in this paragraph 69 and therefore denies the same.  To the extent that paragraph 69 may be read to allege that an agreement exists wherein BMO subordinated its security interest, BMO denies the

same.  To the extent that paragraph 69 may be read as asserting a legal conclusion, no response is required.

70.     In falsely reporting that the BRP Parties had an agreement with BOM to subordinate BOM's security interest to the Kawasaki Parties' covenant not to sue, the BRP Parties and their counsel breached that duty.

**ANSWER**:     BMO lacks information sufficient to admit or deny the allegations in this paragraph 70 and therefore denies the same.  To the extent that paragraph 70 may be read to allege that an agreement exists wherein BMO subordinated its security interest, BMO denies the same.  To the extent that paragraph 70 may be read as asserting a legal conclusion, no response is required.

71.     As a proximate result of the BRP Parties and their counsel breach of their duty, Kawasaki Parties were unable to obtain the subordination agreement for which it had bargained.

**ANSWER**:     BMO lacks information sufficient to admit or deny the allegations in this paragraph 71 and therefore denies the same.  To the extent that paragraph 71 may be read to allege that an agreement exists wherein BMO subordinated its security interest, BMO denies the same.  To the extent that paragraph 71 may be read to allege that the Kawasaki Parties bargained with BMO for a subordination agreement, BMO denies the same.  To the extent that paragraph 71 may be read as asserting a legal conclusion, no response is required.

72.     As a proximate result of the BRP Parties and their counsel breach of their duty, Kawasaki Parties were damaged.

**ANSWER**:     BMO lacks information sufficient to admit or deny the allegations in this paragraph 72 and therefore denies the same.  To the extent that paragraph 72 may be read to allege that BMO had a duty to subordinate its security interest, BMO denies the same.  BMO further denies that the Kawasaki Parties have been damaged by the BRP Parties' failure to obtain a subordination agreement, if one was required.  To the extent that paragraph 72 may be read as asserting a legal conclusion, no response is required.

73.     On information and belief, the value of the property rights at issue in this action exceed $75,000, exclusive of interest and cost.

**ANSWER**:     Denied.

## COUNT VII
### THE BANK OF MONTREAL'S BREACH OF A THIRD PARTY BENEFICIARY CONTRACT

74.     The Kawasaki Parties incorporate by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

**ANSWER**:     BMO incorporates by reference its answers to the preceding paragraphs of this Complaint as if fully set forth herein.

75.     On information and belief and in the alternative, the BRP Parties entered into an agreement with BOM concerning the subordination requested by the Kawasaki Parties during negotiation of the Settlement Agreement whereby the BOM would agree to subordinate the security interests to the Settlement Agreement.

**ANSWER**:     Denied.

76.     On information and belief and in the alternative, this agreement was made expressly for the Kawasaki Parties' benefit.

**ANSWER**:     Denied.

77.     On information and belief and in the alternative, the contracting parties to this agreement, the BOM and the BRP Parties intended that the Kawasaki Parties benefit from the agreement.

**ANSWER**:     Denied.

78.     On information and belief and in the alternative, the BOM has refused to perform its obligations under the third party agreement made expressly for the benefit of the Kawasaki Parties.

**ANSWER**:     Denied.

79.     On information and belief and in the alternative, the Kawasaki Parties have no adequate remedy at law, in that only a subordination of the security interest held by the BOM (as administrative agent) can place the Kawasaki Parties in the same position as if the BOM had fully performed its obligations under the Settlement Agreement.  The balance of equities favors an order of specific performance on the BOM's contractual obligations, and no public policy will be offended by an order of specific performance.

**ANSWER**:       Denied.  To the extent that paragraph 79 may be read as asserting a legal

conclusion, no response is required.

80.     As a direct and proximate result of the BOM's breach of the third party agreement made expressly for the benefit of the Kawasaki Parties, the Kawasaki Parties were damaged.  On information and belief, the value of the property rights at issue in this action exceed $75,000, exclusive of interest and cost.

**ANSWER**:       Denied.

## COUNT VIII
### THE BANK OF MONTREAL'S TORTIOUS INTERFERENCE WITH THE SETTLEMENT AGREEMENT

81.     The Kawasaki Parties incorporate by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

**ANSWER**:       BMO incorporates by reference its answers to the preceding paragraphs of

this Complaint as if fully set forth herein.

82.     The Settlement Agreement between the BRP Parties and the Kawasaki Parties is a contract subject to interference.  On information and belief, the Kawasaki Parties, the BRP Parties and the BOM were all aware of the Kawasaki Parties' need to obtain subordination of the security interests to the Settlement Agreement.

**ANSWER**:       Denied.  To the extent that paragraph 82 may be read as asserting a legal

conclusion, no response is required.

83.     On information and belief and in the alternative, during the negotiation of the Settlement Agreement, the BOM represented to the BRP Parties that it would provide the requested subordination.

**ANSWER**:       Denied.

84.     On information and belief and in the alternative, at some time thereafter, the BOM refused to provide the requested subordination of its rights to Kawasaki's covenant not to sue, despite having represented to the BRP Parties that it would do so.

**ANSWER**:       Denied.

85.     The BOM's willful and intentional refusal to perform, despite having represented to the BRP Parties previously that it would provide the subordination is an act of interference.

**ANSWER**:       Denied.  To the extent that paragraph 85 may be read as asserting a legal conclusion, no response is required.

86.    The BOM's act of interference is the proximate cause of the BRP Parties inability to provide the Kawasaki Parties with the requested subordination.

**ANSWER**:       Denied.  To the extent that paragraph 86 may be read as asserting a legal conclusion, no response is required.

87.    As a result of this interference, the Kawasaki Parties were damaged.

**ANSWER**:       Denied.

88.    On information and belief, the value of the property rights at issue in this action exceed $75,000, exclusive of interest and cost.

**ANSWER**:       Denied.


**FIRST AFFIRMATIVE DEFENSE: LACK OF SUBJECT MATTER JURISDICTION**

1.    This Court lacks subject matter jurisdiction over this dispute because the Kawasaki Parties have failed to name a Kawasaki entity that was a party to the Settlement Agreement that destroys diversity jurisdiction.  This entity, Kawasaki Motors Corp., U.S.A. a Delaware corporation (*"Kawasaki Delaware"*), is an indispensible party to this matter which destroys diversity jurisdiction, as defendant BRP-US is also a Delaware corporation.  Kawasaki Delaware is an indispensible party to this case because BMO could be subject to multiple judgments on the same purported "third party beneficiary" and "tortious interference" claims at issue in this case through a subsequent suit by Kawasaki Delaware.  Given that Kawasaki Delaware was at all times a party to the Settlement Agreement, it appears that it was left out in an attempt to manufacture diversity jurisdiction.

2.    Kawasaki Delaware is a party to the Settlement Agreement.

3.      Kawasaki Delaware is a Delaware corporation with its principal place of business in Irvine, California.

4.      Kawasaki Delaware is a separate legal entity from Plaintiffs Kawasaki Heavy Industries, Ltd.   (a/k/a Kawasaki   Jukogyo   Kabushiki   Kaisha)   and   Kawasaki   Motors Manufacturing Corp., U.S.A.

5.      Kawasaki Delaware is the primary entity controlling Kawasaki's U.S. operations and controls substantially all sales and operations associated with Kawasaki-branded products in the United States, including personal watercraft, motorcycles, ATVs and other products.

6.      Kawasaki Delaware's annual revenue tops 1.6 billion dollars.   It has approximately 480 employees and more than 1,500 dealers.   It also has regional sales offices and/or distribution centers in Piscataway, New Jersey; Atlanta, Georgia; Fort Worth, Texas; and Grand Rapids, Michigan.

7.      Kawasaki Heavy Industries, Ltd. (a/k/a Kawasaki Jukogyo Kabushiki Kaisha) is the Japanese parent of Kawasaki Delaware.

8.      Kawasaki Motors Manufacturing Corp., U.S.A. of Lincoln, Nebraska operates a small engine manufacturing plant in Maryville, Missouri.

9.      Upon information and belief, Kawasaki Delaware has its own corporate identity, maintains its own books and records, and is an independent contracting party with respect to the Settlement Agreement.

10.     Kawasaki Delaware lacks any meaningful identity of interest with the other plaintiffs and has independent rights and obligations under the Settlement Agreement.

11.     Kawasaki Delaware has a material interest in this litigation because whatever rights it has under the Settlement Agreement will be materially affected or altered by this proceeding, including, *inter alia*, whether its rights are subordinate to those of BMO.

12.     In a breach-of-contract action, all parties whose rights will be affected are indispensible.

13.     Complete relief cannot be afforded in this matter absent the joinder of Kawasaki Delaware because, *inter alia,* in the scenario complained of by Kawasaki (*i.e.,* a subsequent foreclosure suit by BMO), BMO's rights could be senior to those of Kawasaki Delaware but junior to those of Kawasaki Heavy Industries, Ltd. (a/k/a Kawasaki Jukogyo Kabushiki Kaisha) and Kawasaki Motors Manufacturing Corp., U.S.A. if they were to prevail in this lawsuit.

14.     BMO would be subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the failure to join Kawasaki Delaware.

15.     BMO would be at further risk for incurring double damages by virtue of Kawasaki Delaware's purported status as a "third party beneficiary" of the alleged "contract" between BMO and the BRP Parties, as well as for the purported acts of "tortious interference" with the Settlement Agreement, to which Kawasaki Delaware is a party.  Since Kawasaki Delaware could bring its own suit against BMO on the same claims, any identity of interest among the Kawasaki Parties will not allow for complete relief.

16.     Also, Paragraph 15 of the Settlement Agreement identifies Kawasaki Delaware as the party to whom "[a]ll notices required or permitted to be given" should be directed.  These notices are to be given to the attention of the "Vice President, General Counsel & Secretary" at the address provided for Kawasaki Delaware.

17.     Given that the Complaint asserts fraud in the inducement, various misrepresentations, acts of negligence, and the existence of contracts, what was communicated to Kawasaki Delaware as the  notice party will be at issue in the dispute.

18.     Additionally, Kawasaki Delaware's interests will be directly affected by this Court's ruling.

19.     Further, if BMO prevails, Plaintiffs' rights in the patents will be subordinate to those of BMO, and in the event of default and foreclosure, Kawasaki Delaware could be subject to a future suit for infringement by the party who acquires the patents in foreclosure.

20.     As such, BMO would suffer substantial prejudice by being forced to proceed in the absence of Kawasaki Delaware.

21.     Additionally, the other Defendants would be subject to the risk of duplicative claims by Kawasaki Delaware.

22.     Kawasaki Delaware must be joined in this matter.

23.     The existing Plaintiffs will not be prejudiced because, upon dismissal, they may proceed in any state court possessing personal jurisdiction over the parties.

24.     Plaintiffs knew that Kawasaki Delaware was a party to the Settlement Agreement because they negotiated the relevant provisions and filed the Settlement Agreement in response to motions to dismiss in this proceeding.

25.     Upon information and belief, Plaintiffs chose not to name Kawasaki Delaware because they knew that it would destroy diversity jurisdiction.

26.     Page One of the Settlement Agreement identified Kawasaki Delaware as a Delaware corporation along with defendant BRP U.S., Inc.

27.      Further, upon information and belief, the fact that this dispute was not simply refiled as a breach-of-contract action in the U.S. District Court for the Eastern District of Texas suggests that the Plaintiffs were aware that federal jurisdiction was lacking.

28.     The addition of a non-diverse, indispensable party defeats jurisdiction and the case must be dismissed.

**SECOND AFFIRMATIVE DEFENSE: FAILURE TO JOIN AN INDISPENSABLE PARTY**

29.    BMO incorporates the allegations contained in its First Affirmative Defense above as if fully set forth herein.

30.    Kawasaki Delaware is an indispensable party to this dispute.

31.    In equity and good conscience, the action cannot proceed in the absence of Kawasaki Delaware.

32.    As such, the case must be dismissed.

**THIRD AFFIRMATIVE DEFENSE: IMPROPER VENUE**

33.    BMO incorporates by reference the preceding allegations contained in its affirmative defenses as if fully set forth herein.

34.    BMO is a Canadian chartered bank operating in the United States through its Chicago Branch located at 115 South LaSalle Street, Chicago, Illinois.

35.    Under the Illinois Banking Act, BMO has the same rights and privileges as a state bank, and is subject to the same duties, restrictions, penalties and liabilities under the Illinois Banking Act as a state bank.

36.    Other proper venues exist in which Plaintiffs could have brought their claims.

37.    Additionally, if the Court deems BMO a foreign corporation, BMO may still contest venue where an indispensable party has been dismissed for improper venue.   If venue is found improper for the Individual Defendants, who clearly are indispensable parties, the claims against BMO should be dismissed for improper venue as well.

**FOURTH AFFIRMATIVE DEFENSE: ESTOPPEL**

38.    BMO incorporates by reference the preceding allegations contained in its affirmative defenses as if fully set forth herein.

39.     Plaintiffs' claims against BMO are barred by the doctrine of estoppel because it was the responsibility of Plaintiffs' counsel for the Settlement Agreement to ensure that all conditions precedent and subsequent with respect to the Settlement Agreement were satisfied.

40.     Plaintiffs further had a responsibility to ensure that all conditions with respect to the Settlement Agreement were complied with prior to dismissing their lawsuits.

41.     Plaintiffs and/or their counsel failed to timely ensure that Kawasaki received whatever documentation it believed it was entitled to receive from the BRP Parties under the Settlement Agreement.

42.     The Plaintiffs had actual and/or constructive notice that the subordination provision was not complied with since at least April 2008.

43.     The Plaintiffs intended to relinquish any right to pursue BMO in favor of exercising remedies in the Eastern District of Texas proceeding.

44.     At the hearing on the matter in front of the Eastern District of Texas, Plaintiffs represented to that Court that there was no agreement by BMO to subordinate its security interest.

45.     Upon information and belief, Plaintiffs also indicated to BRP that BMO needed only to agree that the proposed transaction was in the "ordinary course" of BRP's businesses, which is inconsistent with the existence of any agreement between BRP and BMO to subordinate BMO's security interest.

46.     Plaintiffs also represented to BRP that if BMO agreed that the proposed transaction was in the "ordinary course" of BRP's businesses, that all of BRP's subordination obligations would be satisfied.

47.     The Plaintiffs intended to relinquish any right to pursue BMO in favor of seeking the "ordinary course" letters, which were provided to BRP.

48. BMO reasonably relied on these positions in providing subsequent correspondence relating to the ordinary course nature of the transaction.

49. The facts and circumstances surrounding the pursuit of BRP in the Eastern District of Texas are unequivocally inconsistent with pursuing claims against BMO.

### FIFTH AFFIRMATIVE DEFENSE: WAIVER

50. BMO incorporates the preceding paragraphs of its affirmative defenses as if fully set forth herein.

51. Plaintiffs agreed to dismiss the underlying lawsuits without obtaining evidence of subordination.

52. Plaintiffs had full knowledge that BMO did not subordinate its security interest since at least April 2008. Yet, it did not file this suit until almost two-and-a-half (2.5) years later.

53. Additionally, Plaintiffs were timely informed that no such subordination agreement existed by the Individual Defendants.

54. Plaintiffs' further had a responsibility to ensure that all conditions with respect to the Settlement Agreement were complied with prior to dismissing their lawsuit.

55. Plaintiffs also had a further responsibility to ensure that any approvals from BMO that they required or needed were obtained prior to consummating the Settlement Agreement.

56. Plaintiffs at numerous times acted inconsistent with any intention to enforce any subordination requirements of the Settlement Agreement.

57. Plaintiffs failed to timely assert their rights throughout 2008 and 2009.

58. To the extent that the Plaintiffs claim they had any right to seek subordination of BMO's security interest, they have knowingly and voluntarily relinquished that right.

59. The Kawasaki Parties had actual and/or constructive notice that the subordination provision was not complied with since at least April 2008.

60.     The Kawasaki Parties relinquished any right to pursue BMO in favor of exercising remedies in the Eastern District of Texas proceeding.

61.     Instead, they advocated positions before that Court that were inconsistent with any purported third party beneficiary contract or any purported tortious conduct by BMO.

62.     The facts and circumstances surrounding the pursuit of BRP in the Eastern District of Texas are unequivocally inconsistent with pursuing claims against BMO.

**SIXTH AFFIRMATIVE DEFENSE: UNCLEAN HANDS**

63.     BMO incorporates by reference the preceding allegations contained in its affirmative defenses as if fully set forth herein.

64.     Plaintiffs had a responsibility to ensure that all conditions with respect to the Settlement Agreement were complied with prior to dismissing their lawsuit.

65.     After Plaintiffs' attempts to enforce the Settlement Agreement in the Eastern District of Texas failed, they commenced this proceeding in a bad faith attempt to force BMO to agree to contractual terms to which it had no obligation or authority to agree.

**SEVENTH AFFIRMATIVE DEFENSE: STATUTE OF LIMITATIONS**

66.     BMO incorporates by reference the preceding allegations contained in its affirmative defenses as if fully set forth herein.

67.     Plaintiffs claims are barred because they were not brought within the applicable limitations period.

68.     Plaintiffs tort claims are governed by a two-year statute of limitations period and the claims were not brought within that period.

**EIGHTH AFFIRMATIVE DEFENSE: PRIVILEGE**

69.     BMO incorporates by reference the preceding allegations contained in its affirmative defenses as if fully set forth herein.

70.     BMO had an absolute privilege to not subordinate its security interest in BRP's patents.  BMO's prior perfected security interest, *inter alia,* gave it an interest which the law deems to be of equal or greater value than the subsequent Settlement Agreement negotiated by the BRP Parties and the Kawasaki Parties.

### NINTH AFFIRMATIVE DEFENSE: STATUTE OF FRAUDS AND/OR THE ILLINOIS CREDIT AGREEMENT ACT

71.     BMO incorporates by reference the preceding allegations contained in its affirmative defenses as if fully set forth herein.

72.     Any purported agreement to subordinate by BMO is rendered unenforceable by the statute of frauds because it is not in writing and signed by BMO.

73.     Further, the Illinois Credit Agreement Act bars all claims in any way relating to a credit agreement unless they are in writing and signed by BMO.

### TENTH AFFIRMATIVE DEFENSE: UNENFORCEABILITY

74.     BMO incorporates by reference the preceding allegations contained in its affirmative defenses as if fully set forth herein.

75.      Any purported subordination requirement in the Settlement Agreement is unenforceable because it is indefinite.

76.      Additionally, any alleged contract between the BRP Parties and BMO concerning subordination is unenforceable for lack of consideration.

### ELEVENTH AFFIRMATIVE DEFENSE: COURSE OF PERFORMANCE

77.     BMO incorporates by reference the preceding allegations contained in its affirmative defenses as if fully set forth herein.

78.      The BRP Parties were relieved of any obligation to obtain subordination by the Plaintiffs' agreement to dismiss the lawsuits without receiving any subordination agreement.

79.     By acquiescing and dismissing the lawsuits without obtaining any subordination, the Settlement Agreement was modified to exclude any subordination requirement.

80.      Additionally, to the extent that the Plaintiffs' agreement to dismiss the lawsuits is not alone sufficient, the Plaintiffs' subsequent demand that BMO confirm the "ordinary course" nature of the transaction modified the contract to eliminate any formal subordination requirement.

81.     Plaintiffs' subsequent demand that BMO provide assurances that the transaction is in the "ordinary course" of BRP's businesses shows that the parties have modified the Settlement Agreement to remove the requirement of any formal subordination.

82.     At all relevant times, BMO acted in good faith to accommodate the desires of the BRP Parties.

### TWELFTH AFFIRMATIVE DEFENSE:  LACHES

83.     BMO incorporates the preceding paragraphs of its affirmative defenses as if fully set forth herein.

84.     Plaintiffs have unreasonably delayed commencing their lawsuit against BMO in this matter.

85.     BMO has been prejudiced in this matter because, *inter alia,* evidence or testimony may no longer be available to defend against the Kawasaki Parties' claims.

### ADDITIONAL DEFENSES

86.     BMO is entitled to assert such additional defenses as may be justified on facts disclosed over the course of litigation, and therefore, reserves the right to assert such additional affirmative defenses.

### DEMAND FOR JURY TRIAL

87.     BMO demands trial by jury on all issues so triable.

WHEREFORE, BMO prays that the Complaint be dismissed with prejudice on the merits, that Plaintiffs take nothing thereby, that BMO be awarded its reasonable attorney fees and costs incurred in the defending against the Complaint and for such other and further relief as the Court may deem appropriate under the circumstances.

Dated:  May 24, 2011

Respectfully submitted,

By _____ s/ James Heiser _____

    James E. Spiotto (*admitted pro hac vice*)
    Ann Acker (*admitted pro hac vice*)
    James Heiser
    Laura E. Appleby (*admitted pro hac vice*)
    CHAPMAN AND CUTLER LLP
    111 West Monroe Street
    Chicago, Illinois  60603-4080
    Phone:   (312) 845-3000
    Fax:     (312) 701-2361
    E-mail:  spiotto@chapman.com
            acker@chapman.com
            heiser@chapman.com
            appleby@chapman.com

    Ted MacDonald
    Beth Bauer
    Jason Johnson
    HEPLERBROOM LLC
    103 West Vandalia Street, Suite 300
    Edwardsville, Illinois  62025-0510
    Phone:   (618) 656-0184
    Fax:     (618) 656-1364
    E-mail:  tjmheplerbroom.com
            bab@heplerbroom.com
            jdj@heplerbroom.com

## CERTIFICATE OF SERVICE

I, James Heiser, an attorney, hereby certify that I caused a true and accurate copy of **Bank of Montreal's Answers and Affirmative Defenses** to be served via the Court's ECF System upon the individuals listed below, before the close of business this 24th day of May 2011.

David B. Jinkins
THOMPSON COBURN LLP
1 US Bank Plaza
Suite 2600
St. Louis, MO 63101
djinkins@thompsoncoburn.com

Richard A. Mueller
THOMPSON COBURN LLP
1 US Bank Plaza
Suite 2600
St. Louis, MO 63101
rmueller@thompsoncoburn.com

Steven E. Garlock
THOMPSON COBURN LLP
1 US Bank Plaza
Suite 2600
St. Louis, MO 63101
sgarlock@thompsoncoburn.com

Jonathan G. Musch
THOMPSON COBURN LLP
1 US Bank Plaza
Suite 2600
St. Louis, MO 63101
jmusch@thompsoncoburn.com

Thomas Q. Keefe , Jr.
THOMAS Q. KEEFE PC
6 Executive Woods Court
Belleville, IL 62226
debbie@tqkeefe.com

John Sandberg
SANDBERG, PHOENIX & VON GONTARD
600 Washington Avenue
15th Floor
St. Louis, MO 63101
jsandberg@sandbergphoenix.com

Aaron D. French
SANDBERG, PHOENIX & VON GONTARD
600 Washington Avenue
15th Floor
St. Louis, MO 63101-1313
afrench@sandbergphoenix.com

Christopher W. Byron
BYRON GERBER PETRI & KALB LLC
241 North Main Street
Edwardsville, IL 62025
cwb@byrongerber.com

Christopher J. Petri
BYRON GERBER PETRI & KALB LLC
241 North Main Street
Edwardsville, IL 62025
cjp@byrongerber.com

Ronald L. Pallmann
BYRON GERBER PETRI & KALB LLC
241 North Main St.
Edwardsville, IL 62025
rlp@byrongerber.com

s/ James M. Heiser
James M. Heiser